UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES[1], Attorney General of the
State of New York,

Plaintiff,

-against-                                             Case No. 18-cv-9812 (AJN)

DEBT RESOLVE, INC.; HUTTON VENTURES, LLC;
PROGRESS ADVOCATES, LLC; PROGRESS ADVOCATES
GROUP, LLC; STUDENT ADVOCATES, LLC; STUDENT
ADVOCATES GROUP, LLC; STUDENT ADVOCATES
TEAM, LLC; STUDENT LOAN CARE, LLC; STUDENT
LOAN SUPPORT LLC; EQUITABLE ACCEPTANCE
CORPORATION; BRUCE BELLMARE; and STANLEY E.
FREIMUTH,

Defendants.
------------------------------------------------------------------------ X

### THE NYAG'S MEMORANDUM OF LAW IN OPPOSITION TO DEBT RESOLVE, INC.'S, BRUCE BELLMARE'S, AND STANLEY E. FREIMUTH'S SECOND MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
28 Liberty Street
New York, New York 10005

Of Counsel:

JANE M. AZIA, Bureau Chief
LAURA J. LEVINE, Deputy Bureau Chief
MELVIN GOLDBERG, Assistant Attorney General
STEWART DEARING, Assistant Attorney General
ELIZABETH LYNCH, Assistant Attorney General

---

[1] Pursuant to the Court's Order, ECF No. 63, Letitia James, who became the New York Attorney General on January 1, 2019, was substituted for Barbara D. Underwood.

# TABLE OF CONTENTS

PAGE

INTRODUCTION ............................................................................................................. 1

STATUTORY BACKGROUND ....................................................................................... 2

ARGUMENT ................................................................................................................... 4

I.   Rule 9(b)'s Heightened Pleading Standard Does Not Apply, But Even If It Did, the
     Complaint   Readily Meets the Standards of Rule 8 and Rule 9(b) ........................................ 5

     A.   Rule 9(b)'s Heightened-Pleading Standard Does Not Apply ........................................ 5

     B.   The Complaint Satisfies the Notice Pleading Standard of Both Rules 8(a) and 9(b) ..... 8

          i.    The Complaint Satisfies the General Notice Requirements of Rule 8(a) .............. 8

          ii.   Even If Rule 9(b) Did Apply, the Complaint Satisfies the Heightened-
                Pleading Standard ................................................................................................. 12

II.  The Complaint Adequately Pleads that Debt Resolve is Liable for the Deceptive and
     Illegal Acts of Co-Defendants ........................................................................................... 13

     A.   Debt Resolve Directly Participates in the Deceptive Scheme .................................... 14

     B.   Debt Resolve is Liable as Part of a Common Enterprise ............................................ 16

III. The NYAG Has Adequately Alleged That Defendants Bellmare and Freimuth Are
     Personally Liable For the Fraudulent, Deceptive and Illegal Acts and Practices
     Alleged in the Complaint ................................................................................................... 18

CONCLUSION ............................................................................................................... 22

**CASES**

*Alleghany Co-op Ins. Co. v. Dimora*,
  669 F. Supp. 2d 315 (W.D.N.Y. 2009) .................................................................10

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014).....................................................................9

*Barnet v. Drawbridge Special Opportunity Fund LP*,
  No. 14-cv-1376 (PKC), 2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014)...................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................5

*Capitol Records, LLC v. Redigi Inc.*,
  No. 12-cv-95 (RJS), 2014 WL 4354675 (S.D.N.Y. Sept. 2, 2014) .......................10

*CFPB v. RD Legal Funding, LLC*,
  332 F. Supp. 3d 729 (S.D.N.Y. 2018)..............................................................2, 8, 9

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  2011 U.S. Dist. LEXIS 94000 (S.D.N.Y. Aug. 19, 2011) ....................................21

*Cortese v. Edge Sols., Inc.*,
  Civil Action No. 04-0956 (DRH)(ARL), 2007 WL 2782750 (E.D.N.Y. Sept.
  24, 2007) .................................................................................................................4

*Delaware Watch Co. v. FTC*,
  332 F.2d 745 (2d Circuit 1964)............................................................................17

*Delgado v. Ocwen Loan Servicing, LLC*,
  No. 13-cv-4427 (NGG), 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014)................8

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  783 F.3d 395 (2d Cir. 2015).................................................................................12

*FTC v. Campbell Capital LLC*,
  18-CV-1163-LJV-MJR, 2018 WL 5781458 (W.D.N.Y. Oct. 24, 2018).................3

*FTC v. Leadclick Media, LLC*,
  838 F. 3d 158 (2d Cir. 2016).................................................................................15

*FTC v. Medical Billers Network, Inc.*,
  543 F. Supp. 2d 283 (S.D.N.Y. 2008)....................................................................7

*FTC v. Student Aid Ctr., Inc.*,
   281 F. Supp. 3d 1324 (S.D. Fla. 2016) ...................................................7

*FTC v. Tax Club, Inc.*,
   994 F. Supp. 2d 461 (S.D.N.Y. 2014) ......................................... 7, 16-17

*FTC v. Vantage Point Servs., LLC*,
   No. 15-CV-006S, 2015 U.S. Dist. LEXIS 63940 (W.D.N.Y. May 15, 2015)................. 16-17

*FTC v. Wyndham Worldwide Corp*,
   2014 U.S. Dist. LEXIS 84913 (N.J. 2014) ...........................................16

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   94 N.Y.2d 330 (1999) ..............................................................3

*Garcia v. Chrysler Grp. LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015) ...............................................7

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ...............................................7

*Jemmott v. New York City Transit Authority*,
   660 Fed. Appx. 62 (2d Cir. 2016) ............................................. 11-12

*Jordan v. Ellsworth*,
   Case # 16-CV-6384-FPG, 2017 WL 6059889 (W.D.N.Y. Dec. 7, 2017) ........................ 1, 3-4

*Karlin v. IVF Am., Inc.*,
   93 N.Y.2d 282 (1999) ............................................................ 3-4

*Lefkowitz v. Bull Inv. Grp.*,
   46 A.D.2d 25 (3d Dep't 1974) ......................................................2

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015) .......................................................5

*Matsumura v. Benihana Nat'l Corp.*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008) ...............................................8

*Milner v. Henderson*,
   225 F.3d 646 (2d Cir. 2000) ......................................................10

*Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.*,
   603 F. Supp. 339 (S.D.N.Y. 1985) .................................................2

*New York v. Actavis, PLC*,
   No. 14 Civ. 7473, 2014 WL 7015198 (S.D.N.Y. Dec. 11, 2014)...........................4

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
   2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ........................................................................12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   85 N.Y.2d 20 (1995) ........................................................................................................3

*Pechinski v. Astoria Fed. Sav. & Loan Ass'n*,
   238 F. Supp. 2d 640 (S.D.N.Y. 2003)..............................................................................4

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005)............................................................................................6

*People v. Am. Motor Club, Inc.*,
   179 A.D.2d 277 (1st Dep't 1992) ...................................................................................19

*People v. Anderson*,
   137 A.D.2d 259 (4th Dep't 1988) ....................................................................................4

*People v. Apple Health & Sports Clubs*,
   80 N.Y.2d 803 (1992) .............................................................................................16, 18

*People v. Applied Card Sys., Inc.*,
   27 A.D. 3d 104 (3d Dep't 2005) ......................................................................................3

*People v. Concert Connection*,
   211 A.D.2d 310 ...............................................................................................................19

*People v. Court Reporting Inst.*,
   245 A.D.2d 564 (2d Dep't 1997) ...................................................................................19

*People v. Direct Revenue, LLC*,
   862 N.Y.S.2d 816, 2008 WL 1849855 (Sup. Ct. N.Y. Cty. March 12, 2008)........................18

*People v. Empire Prop. Sols., LLC*,
   09-017767, 2012 N.Y. Misc. LEXIS 1845 (Sup. Ct. Nassau Cnty. April 10,
   2012) .............................................................................................................................4, 6

*People v.Empryre Inground Pools, Inc.*,
   227 A.D.2d at 734.........................................................................................................19

*People v. Greenberg*,
   27 N.Y.3d 490 (2016) ...........................................................................................2, 4, 19

*People v. Northern Leasing Systems, Inc., et al.*,
   (1st Dep't 2019)............................................................................................................22

*People v. Trump Entrepreneur Initiative LLC*,
   137 A.D.3d 409 (1st Dep't 2016) ....................................................................................2

*Reynolds v. Lifewatch, Inc.*,
    136 F.Supp.3d 503 (S.D.N.Y 2015)........................................................13, 21

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..............................................................................8

*Scott v. Fields*,
    92 A.D.3d 666 (2nd Dep't 2012) .....................................................................10

*Simmons v. Abruzzo*,
    49 F.3d 83 (2d Cir. 1995).................................................................................9

*State v. Daro Chartours, Inc.*,
    72 A.D.2d 872 (3d Dep't 1979) ......................................................................19

*State v. Frink Am. Inc.*,
    2 A.D.3d 1379 (4th Dep't 2003) .....................................................................19

*Taub v. World Financial Network Bank*,
    950 F.Supp.2d 698 (S.D.N.Y. 2013)..................................................................4

*United States v. Dish Network LLC*,
    75 F. Supp. 3d 916 (C.D. Ill. 2014) (TSR) ........................................................4

*Vantone Grp. LLC v. Yangpu NGT Indus. Co., Ltd.*,
    No. 13-cv-7639 (LTS), 2015 WL 4040882 (S.D.N.Y. July 2, 2015) ......................9

*Vincent v. The Money Store*,
    736 F.3d 88 (2nd Cir. 2013).............................................................................4

*Wolo Mfg. Corp. v. ABC Corp.*,
    2018 U.S. Dist. LEXIS 190790 (E.D.N.Y 2018)...............................................21

*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)...............................................................................9

**FEDERAL STATUTES**

15 U.S.C.
    § 1601...........................................................................................................3
    § 1679...........................................................................................................3
    § 1679h(b)(1) ................................................................................................7
    § 1679h(c) ....................................................................................................4

**STATE STATUTES**

CPLR 3016(b) ...................................................................................................6

General Business Law ("GBL")
    Article 22-A ...................................................................................................4, 7
    Article 28-BB ............................................................................................ 3, 7-8
    § 349.................................................................................................... passim
    § 350......................................................................................................3, 4
    § 350-d ..................................................................................................3, 7
    § 399-pp ....................................................................................................7
    § 399-pp(1).................................................................................................7
    § 399-pp(11)(a) ...........................................................................................4
    § 458-e .....................................................................................................8
    § 458-j ......................................................................................................9

New York Banking Law
    § 14-a ......................................................................................................4
    § 340........................................................................................................4
    § 492........................................................................................................4

New York Executive Law
    § 63(12)............................................................................................. passim

New York Personal Property Law ("PPL")
    § 401........................................................................................................4

**FEDERAL REGULATIONS**

16 C.F.R.
    § 310........................................................................................................2
    § 310.7......................................................................................................4

**RULES**

Fed. R. Civ. P. 8............................................................................5, 9, 10, 12

Fed. R. Civ. P. 8(a) ............................................................................ 6, 8-10

Fed. R. Civ. P.  9(b) ............................................................................ passim

Fed. R. Civ. P. 12(b)(6)...............................................................................5

Fed. R. Civ. P. 15(a)(1)(B) ..........................................................................5

Fed. R. Civ. P. 15(a)(2)...............................................................................1

Plaintiff, People of the State of New York, by Letitia James, Attorney General for the State of New York ("NYAG"), submits this memorandum of law in opposition to the Motion to Dismiss filed by Debt Resolve, Inc. ("Debt Resolve"), Bruce Bellmare and Stanley Freimuth (collectively, "Moving Defendants"), ECF No. 57. [2] For the reasons that follow, Moving Defendants' motion should be denied in its entirety.

## INTRODUCTION

The NYAG brought this case to protect thousands of New York consumers from an ongoing student loan debt-relief scam carried out by twelve different actors, many of which are inter-related companies with similar sounding names that have operated from the same office during certain time periods. In this scam, student loan borrowers are misled with grandiose, baseless promises (such as guaranteed loan forgiveness) into signing up for debt-relief services that cost over $1,000. Defendants require borrowers to pay an upfront fee for these promised services, in violation of New York and federal law, and more recently, required borrowers to finance the contracts through Defendant Equitable Acceptance Corporation ("Equitable"), resulting in a loan above New York's civil usury cap. To the extent any services are performed at all, they constitute only basic filings with the Department of Education ("DOE") that borrowers can file on their own for free. Debt Resolve is the majority owner of two of the faces of this deceptive enterprise- Progress Advocates, LLC ("Progress Advocates") and Student Loan Care,

---

[2] Moving Defendants filed an initial Motion to Dismiss (ECF No. 34) on December 10, 2018. In response, the NYAG amended its complaint once (ECF No. 37) as of right under Federal Rule of Civil Procedure 15(a)(1)(B) and a second time (ECF No. 41) to make paragraph numbering changes under Rule 15(a)(2) with written consent of all opposing counsel who told the NYAG they represented a party. In response to the Second Amended Complaint, the Moving Defendants filed a second Motion to Dismiss (ECF No. 57), which moots and supersedes its initial motion. *See e.g., Jordan v. Ellsworth*, Case # 16-CV-6384-FPG, 2017 WL 6059889, at *2 (W.D.N.Y. Dec. 7, 2017).

LLC ("Student Loan Care"). In addition to its ownership interest, the NYAG alleges that Debt Resolve directly engages in deceptive and unlawful conduct, is also responsible for their co-Defendants' actions and is part of a common enterprise to defraud borrowers. Likewise, the NYAG also alleges sufficiently that the former and current CEOs of Debt Resolve, Bellmare and Freimuth (collectively, the "Individual Defendants") have personally participated in or have knowledge of the deceptive scheme

## STATUTORY BACKGROUND

The NYAG brings this case primarily under New York Executive Law § 63(12). Complaint, Counts 1-2, 4, 6-7, 9, 11, 13, 15-18. Executive Law § 63(12) empowers the NYAG to bring a claim for permanent injunctive relief, disgorgement of profits, restitution, damages and other forms of appropriate equitable relief when a person or business engages in "repeated or persistent fraud or illegality." *See also People v. Greenberg*, 27 N.Y.3d 490, 496-98 (2016). Executive Law § 63(12) defines "fraud" or "fraudulent" as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions." Consistent with this broad language and legislative intent, courts have consistently applied a broad view of what constitutes fraudulent and deceptive conduct under Executive Law § 63(12). *See, e.g., Lefkowitz v. Bull Inv. Grp.*, 46 A.D.2d 25, 28 (3d Dep't 1974). To establish liability for fraud under Executive Law § 63(12), proof of the traditional elements of common law fraud, such as intent to deceive and reliance, is not required. *See People v. Trump Entrepreneur Initiative LLC*, 137 A.D.3d 409, 417 (1st Dep't 2016); *CFPB v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 783-84 (S.D.N.Y. 2018) ("'Fraud' under § 63(12) is not common-law fraud. . . intent . . . or reliance are not required").

The NYAG also alleges violations of New York General Business Law ("GBL") § 349, which declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Compl., Counts 2-3. GBL § 349(b) authorizes the NYAG to seek injunctive relief and restitution "obtained directly or indirectly" when any person "has engaged in or is about to engage in" such practices. GBL § 349 "appl[ies] to virtually all economic activity" and its "application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999). Under § 349, "deceptive acts and practices, whether representations or omissions, [are] those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Like Executive Law § 63(12), § 349 does not require proof of common-law fraud elements, such as intent to deceive and justifiable reliance. *See id.*; *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343 (1999) ("In contrast to common-law fraud . . . § 349 is a creature of statute based on broad consumer-protection concerns."). And both Executive Law § 63(12) and GBL § 349 have a standard similar to § 5 of the FTC Act. *People v. Applied Card Sys., Inc.*, 27 A.D. 3d 104, 107 (3d Dep't 2005); *FTC v. Campbell Capital LLC*, 18-CV-1163-LJV-MJR, 2018 WL 5781458, at *2 (W.D.N.Y. Oct. 24, 2018).

In addition, the Complaint alleges that the Moving Defendants engaged in the following other violations of the following laws: (i) false advertising, GBL §§ 350 and 350-d (Counts 4 and 5); (ii) the Federal Telemarketing Sales Rule, 16 C.F.R. § 310 *et seq.* ("TSR") and its New York equivalent, GBL § 399-pp (Counts 11-14); (iii) the Federal Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA") and its New York equivalent, GBL Article 28-BB (Counts 7-10); (iv) the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") (Count 15); (v)

New York's usury and licensing laws, N.Y. Banking Law § 14-a, N.Y. GOL § 5-501, N.Y.

Banking Law § 340 and N.Y. Banking Law § 492 (Counts 6, 16-17); and (vi) the Retail

Instalment Sales Act, N.Y. Personal Property Law ("PPL") § 401 *et seq.*) (Count 18).  Each of

these violations is alleged as a cause of action under Executive Law § 63(12), which authorizes

the NYAG to seek injunctive relief to enforce any state, federal, or local law or regulation, *see*

*People v. Anderson*, 137 A.D.2d 259, 267-68 (4th Dep't 1988) (collecting cases); *New York v.*

*Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 7015198, at *43 (S.D.N.Y. Dec. 11, 2014).  These

claims are also brought under each respective statute, where expressly authorized by the statute

in question.[3]

All of the laws that form the basis of the NYAG's complaint are remedial statutes that are

to be liberally construed in favor of consumers to effectuate their remedial purpose.  *See Karlin*,

93 N.Y.2d at 290-93 (GBL §§ 349, 350); *Greenberg*, 27 N.Y.3d at 497 (§ 63(12)); *Cortese v.*

*Edge Sols., Inc.*, Civil Action No. 04-0956 (DRH)(ARL), 2007 WL 2782750, at *4 (E.D.N.Y.

Sept. 24, 2007) (CROA); *Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 238 F. Supp. 2d 640, 642

(S.D.N.Y. 2003) (TILA); *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 936 (C.D. Ill.

2014) (TSR); *Vincent v. The Money Store*, 736 F.3d 88, 105 (2nd Cir. 2013) (TILA); *Taub v.*

*World Financial Network Bank*, 950 F.Supp.2d 698, 701 (S.D.N.Y. 2013) (TILA).

## ARGUMENT

---

[3] GBL § 350-d authorizes the NYAG to seek penalties for false advertising. GBL § 458-j authorizes the NYAG to bring an enforcement proceeding for violations of the state Credit Services Law. GBL § 399-pp(11)(a) authorizes the NYAG to enforce violations of the state Telemarketing Sales Act as deceptive practice under GBL Article 22-A. The federal Credit Repair Organization Act and the Telemarketing Sales Act and Rule, 15 U.S.C. § 1679h(c) and 16 CFR § 310.7 respectively, likewise authorizes state Attorneys General to bring enforcement actions for violations.

Moving Defendants seek dismissal of the NYAG's Second Amended Complaint, ECF No. 41 ("Complaint"), for failure to satisfy Federal Rules of Civil Procedure 8 and 9(b). Debt Resolve also argues for dismissal of the Complaint because it claims that it cannot be held vicariously liable for the conduct of its co-Defendants and that liability cannot attach without piercing the corporate veil or finding Debt Resolve to be an alter-ego of co-Defendants. Individual Defendants argue that the Complaint does not allege any wrongdoing on their part and that knowledge of misconduct is not a sufficient basis for liability. For the reasons that follow, Moving Defendants are wrong on all counts.

## I. Rule 9(b)'s Heightened Pleading Standard Does Not Apply, But Even If It Did, the Complaint Readily Meets the Standards of Rule 8 and Rule 9(b)

To survive a motion to dismiss under Rule 12(b)(6), the NYAG need only show that its allegations are plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And at this stage, the Court must accept the NYAG's well-pled facts as true and draw all reasonable inferences in the Plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306-07 (2d Cir. 2015). Moving Defendants attempt to heighten this pleading standard, first by arguing that the NYAG has failed to plead its claims with particularity under Rule 9(b) and, in the alternative, that the claims are too vague to satisfy even Rule 8's liberal standards.[4] For the reasons stated below, the Court should reject Moving Defendants' attempt to apply a heightened pleading standard to the NYAG's consumer protection claims. But even if such a heightened standard were to apply, the Complaint readily meets it.

### A. Rule 9(b)'s Heightened-Pleading Standard Does Not Apply

---

[4] Causes of Actions 1-14 are pled against Debt Resolve and the Individual Defendants.

Moving Defendants briefly mention that because the "predicate" of the Complaint is "fraud and/or a unified course of fraudulent conduct," the NYAG's causes of action must satisfy Rule 9(b). *See* Memorandum of Law in Support of Defendant Debt Resolve, Inc.'s, Bruce Bellmare's and Stanley E. Freimuth's Motion to Dismiss the Second Amended Complaint ("Mem.") at 6. They fail to specify which particular claims warrant Rule 9(b)'s application or to otherwise explain why Rule 9(b) should apply. Moving Defendants are incorrect as a matter of law that Rule 9(b) applies.

Rule 9(b) does not apply to any of the NYAG's causes of action, because none of them allege common law fraud. By its terms, Rule 9(b) only applies to "fraud or mistake." "[T]he United States Supreme Court has consistently cautioned against extending [Rule 9(b)'s] heightened pleading standard beyond claims for fraud or mistake." *RD Legal*, 332 F. Supp. 3d at 768 (citation omitted). The Second Circuit has similarly held that Rule 9(b) does not apply to causes of action that do not "require proof of the same essential elements (such as reliance) as common-law fraud." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (GBL § 349 action is not subject to pleading with particularity requirement of Rule 9(b)).

Because they require a lesser showing than common law fraud, *supra* pages 2-3, courts have consistently ***not*** applied Rule 9(b) to consumer protection claims brought under Executive Law § 63(12) and GBL § 349. *Pelman*, 396 F.3d at 511 ("an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) . . . but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."); *RD Legal*, 332 F. Supp. 3d at 768-69 (Rule 9(b) does not apply to Executive Law § 63(12) and GBL § 349 claims); *People v. Empire Prop. Sols., LLC*, 09-017767, 2012 N.Y. Misc. LEXIS 1845, at *2 (Sup. Ct. Nassau Cnty. April 10, 2012) (CPLR 3016(b), the New York equivalent of Rule 9(b), did not apply to § 63(12) claims, because

6

they differ from common law fraud.). Since its standard is "identical to section 349," Rule 9(b) also has **not** applied to GBL § 350. *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 239 (S.D.N.Y. 2015); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017) ("Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b).").

Rule 9(b) does not apply to the NYAG's other claims. Applying the same logic discussed above, courts have **not** applied Rule 9(b) to the TSR. *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 (S.D.N.Y. 2014) (Rule 9(b) does not apply to claims brought under the FTC Act, including TSR claims); *FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1331-32 (S.D. Fla. 2016) ("Rule 9(b) does not apply to a TSR claim," since "[i]ntent to deceive and reliance are not elements"). GBL § 399-pp specifically invokes the standards of GBL § 349 and the TSR, so Rule 9(b) also does **not** apply. GBL § 399-pp(1) ("The legislature intends that the federal telemarketing and consumer fraud and abuse prevention act [pursuant to which the TSR was enacted] be fully enforceable by appropriate state . . . officials."), (11) (making § 399-pp enforceable via Article 22-A, which includes GBL § 349); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 304-05 (S.D.N.Y. 2008).

Rule 9(b) should also **not** apply to the CROA and GBL Article 28-BB claims. A number of the alleged violations of these laws, such as collecting advance fees and the failure to include certain contract language, do not require any showing of fraud or deception. *See e.g.*, Compl. ¶¶ 274-5, 288-89, 302(c), 303, 316(c), 317. Those that do prohibit misrepresentations, s*ee, e.g. id.* ¶¶ 276, 290, are broad remedial consumer protection claims that do not require proof of the elements of common law fraud, so Rule 9(b) does not apply. *See supra* pages 2-3, 6; 15 U.S.C. § 1679h(b)(1) (violations of CROA are deemed violations of § 5 of the FTC Act); *Tax Club*, 994

F. Supp. 2d at 471 (Rule 9(b) does not apply to FTC Act). In addition, Article 28-BB declares receiving or collecting advance fees to be a "deceptive trade practice," thereby, specifically invoking the GBL § 349 standard to which Rule 9(b) does not apply. GBL § 458-e.  The usury cause of action (Count 6) does not require fraud or deception.

None of the cases relied on by Moving Defendants applied Rule 9(b) to claims for statutory fraud or deception under Executive Law § 63(12) or GBL § 349. *See* Mem. at 6 (citing *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004) (applying Rule 9(b) to a securities fraud claim requiring proof of scienter); *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (stating that Rule 9(b)'s standards applies to common-law claims such as fraud and mistake); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-cv-4427 (NGG), 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) ( not applying Rule 9(b) to the GBL § 349 claim). In fact, in the key case that Moving Defendant's cite, *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F.Supp.3d 729, the Court specifically rejected the application of Rule 9(b) to the NYAG's GBL § 349 and Executive Law § 63(12) claims since the underlying conduct was premised on deception, not fraud. *Id.* at 769 (S.D.N.Y. 2018).

### B.    The Complaint Satisfies the Notice Pleading Standard of Both Rules 8(a) and 9(b)

Contrary to Moving Defendants' contention, the Complaint satisfies both the general pleading standard of Rule 8(a) as well as the heightened pleading standard of Rule 9(b).  To the extent that Moving Defendants contend that the Complaint does not allege that they directly engaged in misrepresentations or other unlawful conduct, they have not identified any pleading deficiencies.  As discussed in Point II below, they simply misunderstand the basis of their liability.

### i.    The Complaint Satisfies the General Notice Requirements of Rule 8(a)

The Moving Defendants' contention that the Complaint fails to satisfy Rule 8(a)'s notice pleading requirements, *see* Mem. at 7, is plainly wrong. The Complaints' allegations easily meet the requirements of Rule 8. "Dismissal under Rule 8 . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Barnet v. Drawbridge Special Opportunity Fund LP*, No. 14-cv-1376 (PKC), 2014 WL 4393320, at *10 (S.D.N.Y. Sept. 5, 2014) (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995) (internal brackets omitted); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (asserting that "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants"). "The test of Rule 8 pleading sufficiency is simply whether Defendants have received adequate notice of the claims." *Vantone Grp. LLC v. Yangpu NGT Indus. Co., Ltd.*, No. 13-cv-7639 (LTS), 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015); *see also*, *Delgado*, 2014 WL 4773991, *7 (stating that Rule 8(a) only requires that the complaint give each defendant fair notice of the claims and the grounds upon which they rest).

The Complaint gives ample notice to Moving Defendants as to the individualized facts upon which each claim is based. That Moving Defendants are often grouped together does not negate fair notice and at the pleading stage, the complaint is ". . . not required to plead specific details as to which entity did what during the alleged course of misconduct." *RD Legal Funding, LLC*, 332 F.Supp.3d at 771; *see also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants"); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 144 (S.D.N.Y. 2014) (a complaint grouping defendants together provided fair notice under Rule 8). The incorporation by reference of all preceding paragraphs into each count also does not present any Rule 8 problem where, as

9

here, those incorporated paragraphs set forth facts that support each and every claim and clearly describe which Defendants engaged in which actions. *See e.g. Milner v. Henderson*, 225 F.3d 646, at *2 (2d Cir. 2000) (a count that "incorporates all of the preceding paragraphs" stated a claim under Rule 8(a)); *Capitol Records, LLC v. Redigi Inc.*, No. 12-cv-95 (RJS), 2014 WL 4354675, at *2 (S.D.N.Y. Sept. 2, 2014) (same). Thus, the requirements of Rule 8 are amply met.

While Debt Resolve is grouped together with Hutton Ventures, LLC as the Owner Defendants, , the Complaint makes specific allegations as to Debt Resolve. The Complaint alleges that Debt Resolve founded and is the majority owner of Progress Advocates and Student Loan Care, the three operated out of the same office in White Plains, New York, and are all small companies with only a handful of employees. The Complaint contains specific allegations as to Debt Resolve's direct conduct, including that Debt Resolve holds itself out as directly providing the "completed, delivered and accepted student loan packages," ¶ 21, and signed an agreement with Equitable in which Debt Resolve agreed to "absolutely, unconditionally, and on a continuing basis" pay any debts Student Loan Care owed to Equitable, ¶ 20  It also alleges the Equitable financing arrangement was illegal for several reasons, including charging illegal, upfront fees and charging usurious interest to New York borrowers. ¶¶9–13, 89-93, 116-134. And because a corporation can act only through its principals, *see Alleghany Co-op Ins. Co. v. Dimora,* 669 F. Supp. 2d 315, 319 (W.D.N.Y. 2009); *Scott v. Fields,* 92 A.D.3d 666, 668 (2nd Dep't 2012), , the allegations against Bellmare and Freimuth, discussed below, also apply to Debt Resolve.

The Complaint also contains specific allegations regarding Bellmare's and Freimuth's actual knowledge of and/or participation in fraudulent, illegal and deceptive acts. For example, the Complaint details the many corporate leadership positions held by Bellmare and Freimuth in

10

co-defendants, Complaint ¶¶ 49-50, 202, 207, and direct actions taken by each in furtherance of the deceptive scheme, including Bellmare's decision that Debt Resolve should, through Student Loan Care, offer student loan debt relief services using Equitable's illegal Credit Plans ("Credit Plans"), ¶¶ 36, 49, 203, and Freimuth's signing a Master Dealer Agreement with Equitable that set the terms for Equitable's purchase of Credit Plans, ¶¶ 50, 209.

Further, the Complaint sufficiently puts the Moving Defendants on notice as to the deceptive and illegal practices of the co-Defendants, including the misrepresentations that Marketing Defendants[5] make to borrowers. For example, the Complaint details Progress Advocates' specific contracts, the upfront payments it required from borrowers and that it deceived borrowers by asserting that there would be no upfront fees. *Id.* ¶¶ 88-89, 95, 125, 148-49. The Complaint also specifies the terms of Student Loan Care's contracts, their upfront fee requirement, and that Student Loan Care similarly deceived borrowers by stating that no up-front fees would be charged. *Id.* ¶¶ 90, 92, 170. The Complaint also sufficiently puts the Moving Defendants on notice as to the other allegations of deception. Progress Advocates, through its use of Marketing Defendant Student Advocates, LLC, *see id.* ¶ 30, misrepresented to borrowers its affiliation with the federal government as well as the expertise of the Student Loan Advisors. *Id.* ¶¶ 145-47. Similarly, the Complaint details Student Loan Care's specific methods of further deceiving borrowers including misrepresenting its affiliation with the federal government and that borrowers were pre-approved for certain plans when they were not. *Id.* ¶¶ 150-160.

The two private plaintiff cases relied on by Moving Defendants in support of dismissal, *Jemmott v. New York City Transit Authority*, 660 Fed. Appx. 62 (2d Cir. 2016), and *Ochre LLC*

---

[5] The terms "Contracting Defendants" and "Marketing Defendants" are used consistent with the Complaint. ¶¶ 24-35.

*v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012),

are readily distinguishable. In *Jemmott*, the Second Circuit upheld the dismissal of a *pro se*

complaint on Rule 8 grounds since the complaint itself "did not set forth a recitation or summary

of the facts" and instead relied upon an attached documents that alluded to various unrelated

events. *Jemmott*, 660 Fed. Appx. at 65. In *Ochre*, the Court dismissed the case primarily on the

grounds that plaintiff's copyright claim was legally invalid because its designs were not

copyrightable. *Ochre*, 2012 WL 6082387, at *3-5. The *Ochre* Court's pleading analysis was

merely an alternative grounds for dismissal. *Id.*, 2012 WL 6082387, at *5. Even so, the *Ochre*

Court found that the plaintiff never actually pleaded the defendants' actions that gave rise to the

claim. *Ochre*, 2012 WL 6082387, at *6-7. Unlike those cases, the Complaint alleges specific

behavior of each of the Moving Defendants that forms the basis of the deception claims. The

instances of overlap are due to the conduct of the Moving Defendants themselves. For all of the

foregoing reasons, the Complaint sufficiently pleads its deception claims against Moving

Defendants.

> ### ii. Even If Rule 9(b) Did Apply, the Complaint Satisfies the Heightened-Pleading Standard

Even if Rule 9(b) did apply, the Complaint's allegations are sufficient. Rule 9(b)

"requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v.*

*Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

The Complaint alleges that Debt Resolve formed and is the majority owner of both

Progress Advocates, one of the Contracting Defendants, and Student Loan Care, which is both a

Contracting and Marketing Defendant, and that Progress Advocates acts in part through the Marketing Defendants. ¶¶ 20 -21, 24, 26, 30, 49 -50, 202 -210. The Complaint further sets forth in detail the numerous misrepresentations made by the Contracting and Marketing Defendants to borrowers, including the nature and terms of the debt-relief programs, *see id*. ¶¶ 168-69, 186-88; that their personnel are highly-trained experts on student loans when they are not, *see id*. ¶¶ 71, 146-47; misrepresented their affiliation with the federal government, *see id.* ¶¶ 150-51, 163-64; that the borrowers were pre-approved for certain programs when they were not, *see id*. ¶¶ 157-58; that borrowers cannot enroll in student debt-relief programs without the Contracting Defendants when they can, *see id.* ¶¶ 67, 165; that payments to the Contracting Defendants will go to borrowers' student loan payments when they will not, *see id*. ¶¶ 183-84; that Contracting Defendants do not charge advance fees when they do, *see id.* ¶¶ 170-71; and that Contracting Defendants fail to explain the nature and terms of the financing contract including misrepresenting that no interest will be charged when it will be, *see id*. ¶¶ 179-82. Further, the Complaint alleges that these misrepresentations and omissions were made via phone, *see id*. ¶¶ 161-62, over the internet, *see id*. ¶¶ 144-49, through the mail, *see id*. ¶¶ 150-158, and on the radio, *see id*. ¶¶ 159-60. Thus, these allegations satisfy the requirements of Rule 9(b). *See Reynolds v. Lifewatch, Inc*., 136 F.Supp.3d 503, 522-23 (S.D.N.Y 2015) (rejecting defendants' contention that plaintiff failed to satisfy Rule 9(b) because it was unable to state the names of the people who made the misrepresentations or the phone numbers they called from).

## II.     The Complaint Adequately Pleads that Debt Resolve is Liable for the Deceptive and Illegal Acts of Co-Defendants

Moving Defendants claim that the Complaint does not plead any cause of action against Debt Resolve for its own conduct but attempts to hold Debt Resolve liable solely for the alleged wrongful acts of its subsidiaries co-Defendants Progress Advocates and Student Loan Care.

Mem. at 3, 4. Debt Resolve further alleges that in order to do so, the Complaint must plead facts sufficient to pierce the corporate veil or establish that these entities were "alter egos" of Debt Resolve. *See* Mem. at 7-13. Debt Resolve also argues that Causes of Action 7-14 apply to only certain types of entities and therefore they cannot be liable. Mem. at 9-10. Debt Resolve is incorrect on all fronts. The Complaint contains allegations that lay out Debt Resolve's own deceptive and unlawful actions as a direct participant and its knowledge and authority to control the deceptive scheme laid out in the Complaint. The Complaint also alleges facts sufficient to hold Defendants liable as interrelated companies engaged in a common enterprise. As such, Defendants' arguments concerning piercing of the corporate veil or establishing "alter-ego" liability are irrelevant. These are not the standards required to hold Defendants liable under New York Executive Law § 63(12).

A. **Debt Resolve Directly Participates in the Deceptive Scheme**

Contrary to Debt Resolve's arguments, the Complaint alleges that Debt Resolve directly participates in the deceptive scheme. The Complaint alleges that Debt Resolve directly provides the debt-relief services at issue in this case, based on Debt Resolve's statements in its 10-Q that "the Company," defined earlier in the 10-Q to mean Debt Resolve (as distinct from any subsidiaries), directly provides the debt-relief "deliverables." Compl. ¶ 21.[6] Thus, by its own description, Debt Resolve directly engages in providing the debt-relief services at issue, either by acting on its own and/or by treating the actions of its purported subsidiaries, Student Loan Care

---

[6] Debt Resolve attempts to wiggle out of its own disclosures by claiming that this 10-Q disclosure "merely explains when revenues are considered earned." Mem. at 11. Yet, while the disclosures do relate to revenue recognition, they are clear that "the Company" -- defined in the 10-Q at page 7 ("Debt Resolve, Inc. (the 'Company') ….") – not its subsidiaries, is "entitled to payment by the client" "when the Company [Debt Resolve] has substantially accomplished the agreed-upon deliverables" consisting of "the completed, delivered and accepted student loan package."

and Progress Advocates, as its own. The Complaint further alleges that Debt Resolve signed an agreement with Equitable in which Debt Resolve agreed to "absolutely, unconditionally, and on a continuing basis" pay any debts Student Loan Care owed to Equitable, and that the Equitable financing arrangement was illegal for several reasons, including charging illegal, upfront fees and charging usurious interest to New York borrowers. ¶¶ 21, 9–13, 89-93, 116-134.

In addition to its direct participation, Debt Resolve is directly liable as a knowing participant in the deceptive scheme alleged in the Complaint. The Second Circuit has found that knowing participation in a deceptive scheme to be, in and of itself, a deceptive act triggering direct liability. *FTC v. Leadclick Media, LLC*, 838 F. 3d 158, 168 (2d Cir. 2016) (corporation held liable for false and deceptive conduct of a separate corporation). "A defendant may be held liable for engaging in deceptive practices or acts if, with knowledge of the deception, it either directly participates in a deceptive scheme or has the authority to control the deceptive content at issue." *Id.* at 168. The Complaint alleges that Debt Resolve participated in and played a controlling role in in the deceptive scheme, by providing the "deliverables", i.e. "completed, delivered and accepted student loan packages", of its purported subsidiaries Student Loan Care and Progress Advocates, and selling such packages to borrowers. *Supra* page14. And the Complaint alleges in detail that those student loan packages were sold based on misleading and deceptive statements and charged illegal upfront fees. Complaint ¶¶ 85-93, 143-198. Given that Debt Resolve conducts business at the same location in White Plains, New York as its subsidiaries Student Loan Care and Progress Advocates, that all three are small companies with only a handful of employees, and that Debt Resolve's current and former CEOs (Bellmare and Freimuth), oversee and oversaw (respectively) the management and financial affairs of Student

Loan Care and Progress Advocates, Compl. ¶¶ 49-50, 202-205, 207-209, the Complaint alleges knowledge and the authority to control.

### B.     Debt Resolve is Liable as Part of a Common Enterprise

The Complaint also alleges that Debt Resolve and the other co-Defendants acted as a common enterprise to deceptively induce borrowers to purchase Defendants' services. In enforcement actions brought by the NYAG pursuant to New York State's consumer protection laws, courts in New York have consistently held that entities are liable for the fraudulent, deceptive, or illegal conduct of interrelated companies engaged in a common enterprise. *People v. Apple Health & Sports Clubs*, 80 N.Y.2d 803, 808 (1992) (holding the parent company could be liable for fraudulent acts of subsidiary where they were "interlocking corporations and acted in concert" to operate health clubs); *FTC v. Vantage Point Servs., LLC*, No. 15-CV-006S, 2015 U.S. Dist. LEXIS 63940, at *20 (W.D.N.Y. May 15, 2015) (multiple corporate entities operated as a common enterprise); *FTC v. Tax Club, Inc.*, 994 F.Supp.2d 461, 470 (S.D.N.Y 2014) (each entity within a set of interrelated companies may be held jointly and severally liable for the actions of the other entities that are part of the group). Common enterprise liability is based on the recognition that in a consumer protection enforcement action "where the public interest is involved . . . a strict adherence to common law principles is not required in the determination of whether a parent should be held for the acts of its subsidiary, where strict adherence would enable the corporate device to be used to circumvent the policy of the statute." *FTC v. Wyndham Worldwide Corp*, 2014 U.S. Dist. LEXIS 84913, at *12 (N.J. 2014) (discussing Section 5 of the FTC Act).

The specific conduct of each defendant is irrelevant to common enterprise liability; as long as the defendant was part of the enterprise and the enterprise engaged in wrongdoing, then the defendant is liable. *Tax Club,* 994 F.Supp.2d. at 470. To determine whether a common enterprise exits, courts consider the "pattern and framework of the whole enterprise." *FTC v. Vantage Point Servs., LLC*., 2015, 2015 U.S. Dist. LEXIS at 63940,*3. Courts look to a variety of non-exhaustive factors, including "whether the corporate defendants' (1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club,* 994 F.Supp.2d at 469.

The Complaint has sufficiently alleged facts of a common enterprise between Debt Resolve and the other Defendants including majority-owned subsidiaries Progress Advocates and Student Loan Care. The Complaint alleges that many of the Defendants are "inter-related companies," *see* Complaint ¶ 19, they worked "in collaboration," *see id.* ¶ 4, and operated from the same office and shared personnel. *See id.* ¶ 69. For example, Debt Resolve, Progress Advocates and Student Loan Care all operated out of the same office in White Plains, New York, and had only a small handful of employees. *Id.* ¶¶ 20, 202 and 207. Debt Resolve's former and current CEOs also hold or held management positions at Progress Advocates and Student Loan Care. *Id.* ¶¶ 49 (Bellmare oversees Student Loan Care), 50 (Freimuth was CEO of Progress Advocates). In its 10Q filing, Debt Resolve states that it actually does the debt-relief work it is now claiming only its subsidiaries do. These are the type of factors that show that the separate entities were ". . . transacting an integrated business through a maze of interrelated companies," thus making Debt Resolve liable as part of the common enterprise. *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Circuit 1964). Debt Resolve signed an agreement in 2017 with Equitable

in which Debt Resolve agreed to "absolutely, unconditionally, and on a continuing basis" pay any debts Student Loan Care owed to Equitable.  Compl. ¶ 22.

Defendants' reliance on *People v. Direct Revenue, LLC*, 862 N.Y.S.2d 816, 2008 WL 1849855 (Sup. Ct. N.Y. Cty. March 12, 2008), which was decided at the summary judgment stage and upon a full record, is misplaced. Mem. at 11. *Direct Revenue* did not discuss a common enterprise theory, instead the Court found no evidence that Direct Revenue controlled its independent contractors or ratified their conduct. 862 N.Y.S.2d at *4.

Finally, because the Complaint alleges Debt Resolve's liability under *LeadClick* and/or under a common enterprise theory, it is of no consequence that Debt Resolve is not itself a "credit service business" (Causes of Action 7 and 8), a "credit repair organization" (Causes of Action 9 and 10) or a seller or telemarketer engaged in debt relief services (Causes of Action 11 and 12).

III.    **The NYAG Has Adequately Alleged That Defendants Bellmare and Freimuth Are Personally Liable For the Fraudulent, Deceptive and Illegal Acts and Practices Alleged in the Complaint**

The Complaint adequately pleads that Defendants Bellmare and Freimuth are personally liable for the fraudulent, deceptive or illegal acts alleged in the Complaint.  Just as with Debt Resolve, the Moving Defendants again argue under the wrong legal standard.  Mem. at 13-14. The case law applicable to Executive Law § 63(12) and other consumer enforcement statutes at issue here do not require the NYAG to demonstrate domination of the corporation, intermingling of corporate funds or the failure to observe corporate formalities to establish individual liability as Defendants contend.  Mem. at 18-20.  It is well-settled that individuals are liable for fraudulent and illegal acts in violation of Executive Law § 63(12) and GBL §§ 349 and 350 if those individuals participated in the conduct *or* had actual knowledge.  *See Apple Health &*

18

*Sports Clubs, Ltd.*, 80 N.Y.2d at 807 (officer of health club with knowledge of and participation in club's fraudulent and illegal business dealings held personally liable; *Greenberg*, 95 A.D.3d at 483(officers and directors are personally liable where they either personally participate in the fraud or have actual notice of it); *Williamson*, 8 A.D.3d 925, at *11-12 (individual was owner and/or officer of several of the defendant corporations and "was aware of least some of the violations"); *People v. Court Reporting Inst.*, 245 A.D.2d 564, 565 (2d Dep't 1997) (officers and joint shareholders of trade school); *Empyre Inground Pools, Inc.*, 227 A.D.2d at 734 (officer personally liable for knowing participation in fraudulent acts of home improvement company); *Concert Connection Ltd.*, 211 A.D.2d 310 (president of ticket reseller personally liable for knowing participation in selling tickets for more than the maximum premium price). Where such liability is found, all the relief that can be obtained against a corporate entity can also be obtained against the officers or directors of the corporation, including restitution, injunctive relief, penalties, and costs. *See, e.g.*, *State v. Frink Am. Inc*., 2 A.D.3d 1379, 1381 (4th Dep't 2003); *Court Reporting Inst., Inc*., 245 A.D.2d at 565; *People v. Am. Motor Club, Inc*., 179 A.D.2d 277, 284-85 (1st Dep't 1992); *State v. Daro Chartours, Inc*., 72 A.D.2d 872, 873 (3d Dep't 1979) (individual office and corporation "liable as joint-tort feasors").

The Complaint alleges that Defendants Bellmare and Freimuth each participated in and/or had knowledge of the illegal and fraudulent acts alleged in the Complaint. The Complaint alleges that each participated in the day-to-day operations of Debt Resolve during their respective times as CEO. Compl. ¶¶ 202, 207, 208. The Individual Defendants also held other managerial positions, including Bellmare's service on Debt Resolve's Board of Directors prior to May 2016, *id*. ¶ 49, 202, Bellmare's management of Student Loan Care, *id*. ¶¶ 49, 202-205, and Freimuth's CEO position at Progress Advocates. *Id*. ¶¶ 50, 202-210.

The Complaint provides further examples of Bellmare's knowledge and personal participation in a number of activities squarely at issue in this litigation. In addition to the allegations discussed *supra* pages 10-11, 17, as CEO of Debt Resolve, Bellmare personally determined that Debt Resolve should offer student loan debt-relief services through Student Loan Care using Credit Plans, plans that give rise to multiple legal violations, including charging illegal upfront fees and providing loans to New York borrowers at usurious interest rates. Compl. ¶¶ 49, 206. Bellmare made this decision after reviewing the operations of Progress Advocates and Student Loan Care, operations which included the charging of illegal, upfront fees among other misconduct. *Id*. ¶¶ 9–13, 89-93, 116-134. In furtherance of Bellmare's decision, Debt Resolve signed an agreement with Equitable in which Debt Resolve agreed to "absolutely, unconditionally, and on a continuing basis" pay any debts Student Loan Care owed to Equitable, debts that were related to its illegal use of the Credit Plans. *Id*. ¶¶ 20, 206. The Complaint also alleges that Bellmare had personal knowledge of Student Loan Care's and Equitable's deceptive business practices because "he responded to individual borrower complaints forward to him by the CFPB or State Attorneys General concerning deceptive business practices by Student Loan Care." *Id*. ¶ 205.

The Complaint has similarly adequate allegations of Freimuth's participation and knowledge. In April 2016, Freimuth worked side-by-side with Bellmare during Bellmare's transition to his new role as Debt Resolve's CEO. *Id*. ¶ 208. As the CEO of Progress Advocates, Freimuth signed a Master Dealer Agreement with Equitable that set the terms for Equitable's purchases of the Credit Plans that Progress Advocates entered into with borrowers. *Id*. ¶ 50, 209-210. The Credit Plans give rise to a host of legal violations, including charging illegal upfront fees and providing loans to New York borrowers at usurious interest rates.

These specific allegations of Bellmare's and Freimuth's affirmative acts showing knowledge and/or participation – including but not limited to allegations that they participated in or, in some cases, were the decision maker relating to offering the illegal Equitable Credit Plans are a far cry from the conclusory allegations of individual control over corporate defendants in the two private party cases cited by the Moving Defendants where courts dismissed claims seeking individual liability against corporate officers - *Reynolds v. Lifewatch*, 136 F.Supp.3d 503 (S.D.N.Y 2015), and *Wolo Mfg. Corp. v. ABC Corp.*, 2018 U.S. Dist. LEXIS 190790 (E.D.N.Y 2018). Moreover, the *Reynolds* and *Wolo* Courts incorrectly rejected that liability could be alleged based on knowledge of the deceptive practices, but that conclusion is at odds with well-established interpretations of Executive Law § 63(12) and other consumer public enforcement statutes. In *Reynolds*, the Court recognized the principle that specific allegations of personal participation state a claim for individual liability, *Reynolds* at 526 (citing cases) but simply found that the allegations of personal participation in the case before it were only conclusory. *Id.* *Wolo* analyzed the claim for individual liability in a completely different context - whether the Court had personal jurisdiction over an out-of-state individual defendant in a case involving a federal question.

In contrast to these cases, as described above, the Complaint includes specific allegations, including but not limited to, that the Individual Defendants made critical decisions to provide funding models that involved illegal loans. The specific allegations in the Complaint against Bellmare and Freimuth are sufficient to state a claim. *See Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F. Supp. 339, 341 (S.D.N.Y. 1985)(declining to dismiss complaint against individual defendant because the plaintiff alleged that they "personally participated in the wrongful acts"); *Chloe v. Queen Bee of Beverly Hills, LLC,* 2011 U.S. Dist. LEXIS 94000

(S.D.N.Y. Aug. 19, 2011)("A showing that an officer authorized and approved the acts … which are the basis of the corporation's liability is sufficient participation in the wrongful acts to make the officer individually liable.") *See also People v. Northern Leasing Systems, Inc., et al.*, (1st Dep't 2019)

http://www.courts.state.ny.us/courts/AD1/calendar/appsmots/2019/February/2019_02_19_dec.pdf at page 29. Accordingly, the Complaint adequately alleges that they are each individually liable for those illegal and fraudulent acts and practices of co-Defendants.

## CONCLUSION

For the reasons set forth above, the Court should deny Moving Defendants' motion in its entirety.

Dated: February 19, 2019          Respectfully submitted,
     New York, New York

                              LETITIA JAMES
                              Attorney General of the State of New York
                              Attorney for Plaintiff

                   By:    */s/ Melvin L. Goldberg*_____
                              Melvin L. Goldberg
                              Assistant Attorney General
                              Bureau of Consumer Frauds and Protection

                              28 Liberty Street
                              New York, New York 10005
                              Melvin.Goldberg@ag.ny.gov
                              (212) 416-8296

Of Counsel:

JANE M. AZIA, Bureau Chief
LAURA J. LEVINE, Deputy Bureau Chief
STEWART DEARING, Assistant Attorney General
ELIZABETH LYNCH, Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on February 19, 2019, I filed the foregoing document with the Court's ECF system, which will send notification of such filing to all counsel of record.

*/s/ Melvin L. Goldberg*

Melvin L. Goldberg
Assistant Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street
New York, New York 10005