UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK, by
BARBARA D. UNDERWOOD, Attorney General of
the State of New York,

CIVIL ACTION NO.:
18-CV-09812-AJN

Plaintiff(s),

-against-

DEBT RESOLVE, INC.; et. al.

Defendant(s).
-------------------------------------------------------------------X

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT DEBT RESOLVE, INC.'S, BRUCE BELLMARE'S AND STANLEY E. FREIMUTH'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Clausen Miller
28 Liberty Street, 39th Floor
New York, New York 10005
212.805.3900
*Attorneys for Defendants Debt Resolve, Inc.,
Bruce Bellmare, and Stanley E. Freimuth*

471258.1

# TABLE OF CONTENTS

I. RULE 9(b)'S HEIGHTENED PLEADING STANDARD APPLIES..........................1

II. THE NYAG FAILED TO ADEQUATELY PLEAD THAT BELLMARE AND FREIMUTH ARE BOTH PERSONALLY LIABLE FOR THE ACTS AND PRACTICES ALLEGED IN THE SAC ......................................................................3

III. THE NYAG FAILED TO ADEQUATELY PLEAD THAT DEBT RESOLVE IS LIABLE FOR THE ACTS OF ITS CO-DEFENDANTS............................................6

IV. CONCLUSION............................................................................10

# TABLE OF AUTHORITIES

**Cases**
*Abrahami v. UPC Constr. Co.,*
   224 A.D.2d 231 (App. Div. 1996) ............................................................................. 5
*Apex Mar. Co. v. OHM Enters.,*
   2011 U.S. Dist. LEXIS 35707 (S.D.N.Y. Mar. 30, 2011) .......................................... 3
*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC,*
   332 F. Supp. 3d 729 (S.D.N.Y. 2018) ....................................................................... 1
*Finkel v. D.H. Blair & Co.,*
   213 A.D.2d 588 (App. Div. 1995) ................................................................... 7, 9, 10
*FTC v. Leadclick Media, LLC,*
   838 F.3d 158 (2d Cir. 2016) ................................................................................. 7, 8
*Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.,*
   797 F3d. 160 (2d Cir. 2015) ................................................................................. 4, 5
*Marine Midland Bank v. John E. Russo Produce Co.,*
   50 N.Y.2d 31 (1980) .................................................................................................. 5
*Ningbo Prods. Imp. & Exp. Co. v. Eliau,*
   2011 U.S. Dist. LEXIS 125789 (S.D.N.Y. Oct. 31, 2011) ........................................ 3
*Pelman v. McDonald's Corp.,*
   396 F.3d 508 (2d Cir. 2005) ...................................................................................... 1
*People v. Apple Health & Sports Clubs,*
   80 N.Y.2d 803 (1992) ..................................................................................... 2, 9, 10
*People v. Credit Suisse Sec. (USA) LLC,*
   31 N.Y.3d 623 (N.Y. 2018) ....................................................................................... 2
*Stoltz v. Fage Dairy Processing Indus., S.A.,*
   2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. 2015) .......................................... 7, 9, 10

***Statutory Authorities***
Federal Trade Commission Act, 15 U.S.C. §45 .............................................................. 7
N.Y. Civ. Prac. L. & R. 214(2) ....................................................................................... 2
N.Y. Exec. Law § 63(12) .................................................................................... 1, 2, 7, 8

**Rules and Regulations**
Fed. R. Civ. P. 9(b) .......................................................................................................... 1

471258.1

## REPLY MEMORANDUM OF LAW

Defendants Debt Resolve, Inc. ("Debt Resolve"), Bruce Bellmare ("Bellmare") and Stanley E. Freimuth ("Freimuth") (collectively, the Moving Defendants), submit this Reply Memorandum of Law in support of their Motion to Dismiss Plaintiff's Second Amended Complaint (R.Doc. 41)(the "SAC"). The Moving Defendants dispute the factual allegations set forth in the SAC and in Plaintiff's Opposition to Defendants' Motion to Dismiss. However, even if the Court accepts the truth of those allegations for the limited purpose of this Rule 12(b)(6) motion, the SAC still must be dismissed for the reasons stated in the Moving Defendants' original Memorandum of Law (R.Doc. 58) and as set forth below.

### I. RULE 9(b)'S HEIGHTENED PLEADING STANDARD APPLIES.

The New York Attorney General's Office ("NYAG") does not dispute that the heightened pleading standard of Fed. R. Civ. Pro. 9(b) must be applied if a cause of action is based, in part, on common law fraud or equitable fraud. The case law cited by the NYAG confirms that Rule 9(b)'s pleading standard still applies to claims under N.Y. Executive Law § 63(12) when the underlying basis for those claims is fraud or a fraudulent scheme, rather than mere deception. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 769 (S.D.N.Y. 2018); *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Thus, the relevant inquiry for this Court is whether the underlying basis of the causes of action pled in the SAC is fraud or an allegedly fraudulent scheme, or merely deceptive acts or practices.

The NYAG argues that Rule 9(b)'s pleading standard does not apply to this matter because the SAC only alleges deception and other non-fraudulent conduct. However, that contention is belied by the actual allegations in the SAC, which is based on the allegedly fraudulent conduct of certain Defendants, which the NYAG imputes to other Defendants. "Fraud" or "fraudulent" conduct is mentioned throughout the SAC, and that allegedly fraudulent conduct is used as the

1

factual basis for almost every cause of action. (*See*, R.Doc. 41, SAC ¶ 214, 224, 234, 244, 254, 276, 290, 302, 316, 336, 354, 371, 372, 389). The NYAG's Opposition to Defendants' Motion to Dismiss reiterates the allegations of fraud in the SAC, arguing that the SAC adequately alleges that each Defendant had knowledge of "fraudulent" acts and should be held liable for the "fraudulent" acts and practices of Co-Defendants. (*See*, NYAG's Memo of Law in Opposition (the "NYAG's Opposition"), R.Doc.71, pgs. 9, 18, 23, 25, 26 & 29).

The Complaint also seeks damages for the allegedly fraudulent conduct of some defendants that extends back to at least 2013, more than five (5) years before the initial Complaint in this matter was filed in New York State court. (*See*, R.Doc. 41, ¶¶ 27, 156). However, the statute of limitations for Executive Law § 63(12) claims that are not based on actual or equitable fraud is only three years. *See*, CPLR 214(2); *People v. Credit Suisse Sec. (USA) LLC*, 31 N.Y.3d 623, 638-41 (N.Y. 2018). If the NYAG was only seeking damages for deceptive acts or practices, and truly did not premise its claims on actual or equitable fraud, many of the causes of action pled in the SAC would be partially time barred. The NYAG cannot seek to avoid the higher pleading standards of Rule 9(b) and, at the same time, take advantage of the longer statue of limitations that applies to claims that are premised on actual or equitable fraud.

Furthermore, the NYAG claims that the SAC does not allege actual or equitable fraud, yet seeks to hold Bellmare and Freimuth individually liable for the acts of their Co-Defendants through a rule that only applies to fraudulent conduct. (*See*, NYAG's Opposition, R.Doc. 71 at 25-26). The NYAG cites to various cases for the proposition that "[o]fficers and directors of a corporation may be held liable for *fraud* if they participate in it or have actual knowledge of it." *See, People v. Apple Health & Sports Clubs,* 80 N.Y.2d 803, 807 (1992) (emphasis added).

471258.1

Courts have repeatedly held that when a Plaintiff seeks to hold officers or directors of a corporation personally liable for fraud solely by the fact that they "have actual knowledge of it," the allegations in the complaint must comply with the pleading standards of Rule 9(b). *See, Ningbo Prods. Imp. & Exp. Co. v. Eliau,* 2011 U.S. Dist. LEXIS 125789, at *19-22 (S.D.N.Y. Oct. 31, 2011); *Apex Mar. Co. v. OHM Enters.*, 2011 U.S. Dist. LEXIS 35707, at *12-13 (S.D.N.Y. Mar. 30, 2011). If the SAC does not allege actual or equitable fraud, then the NYAG must be precluded from relying on a standard that only applies to fraudulent conduct to hold Bellmare and Freimuth liable for the acts of others.

As almost every cause of action in the SAC is based on allegedly fraudulent conduct, the heightened pleading standard of Rule 9(b) should be applied to those causes of action. If the Court determines that Rule 9(b) does not apply to some or all causes of action because actual or equitable fraud has not been alleged, those causes of action must be limited by the applicable statute of limitations and the Court should refuse to apply the standard advocated by the NYAG to hold Defendants Bellmare and Freimuth individually liable for those causes of action.

## II. THE NYAG FAILED TO ADEQUATELY PLEAD THAT BELLMARE AND FREIMUTH ARE BOTH PERSONALLY LIABLE FOR THE ACTS AND PRACTICES ALLEGED IN THE SAC

The NYAG's Opposition claims that the SAC "alleges that Defendants Bellmare and Freimuth each participated in … illegal and fraudulent acts." However, no such allegations are actually stated in the SAC. The SAC alleges that Bellmare "oversees the management and financial affairs of Student Loan Care" and "reviewed" the "representations that its Student Loan Advisors were instructed to make to borrowers," but does not allege that Bellmare directly participated in any fraudulent or illegal acts performed by that Defendant or any other Defendants. (SAC, R.Doc. 41, ¶¶ 202, 203). The SAC similarly alleges that Freimuth "oversaw the executive management and financial affairs" of Debt Resolve and Progress Advocates, but does not allege

3

471258.1

that Freimuth directly participated in any fraudulent or illegal acts performed by those Defendants or any other Defendants. (SAC, R.Doc. 41, ¶ 207).

The NYAG's Opposition makes numerous, additional allegations regarding Bellmare's and Freimuth's personal participation in various aspects of Progress Advocates' and Student Loan Care's businesses, but none of those allegations were stated in the SAC. As the NYAG could have added those allegations to an amended complaint after the Moving Defendants filed their original Motion to Dismiss but chose not to do so, the NYAG should not be given the opportunity to file another amended complaint that contains those allegations. *See,* Your Honors' Individual Practices in Civil Cases, § 3.F., *citing, Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.,* 797 F3d. 160, 190 (2d Cir. 2015). Thus, those allegations cannot be considered to determine whether the SAC adequately pleads each and every cause of action against Bellmare and Freimuth.

The only affirmative conduct alleged as to either of the "Individual Defendants" is that Freimuth signed a "Master Dealer Agreement" with Equitable that allegedly included interest rates that are usurious under New York laws. (SAC, R.Doc. 41, ¶ 209). This lone statement does not establish that Freimuth directly participated in any fraudulent or illegal acts. However, even if the Court views this as Freimuth directly setting usurious interest rates, which the Moving Defendants dispute, it only means that the NYAG may have plead a direct cause of action against Freimuth for the sixth cause of action in the SAC, which relates to usurious interest rates. It does not mean that the NYAG can proceed with all of its causes of action against Freimuth.

The NYAG also cites to various cases for the proposition that officers and directors of a corporation may be held liable for fraud if they have actual knowledge of fraudulent activities. (*See,* NYAG's Opposition, R.Doc. 71 at 25-26). As stated above, this standard only applies to fraudulent acts, not the failure to comply with banking rules or other illegal conduct that does not

4

rise to the level of actual or equitable fraud. *Id.* Since the NYAG takes the position that the SAC does not allege actual or equitable fraud, that standard should not be applied to this matter. Even if that standard is applied, the SAC still fails to state a claim against Bellmare and Freimuth.

The SAC alleges that Bellmare and Freimuth either have "personal knowledge" of, or are in "reckless disregard" of, the alleged misrepresentations made by unidentified "student loan advisors," and of the fact that the "Equitable Credit Plans with New York borrowers were at usurious interest rates." (SAC, R.Doc. 41, ¶¶ 206 & 210). However, a "reckless disregard" of a misrepresentation or a "negligent failure" to acquire knowledge of a misrepresentation is insufficient to hold Bellmare and Freimuth individually liable for the actions of Debt Resolve or the other Defendants. *Marine Midland Bank v. John E. Russo Produce Co.*, 50 N.Y.2d 31, 44 (1980); *Abrahami v. UPC Constr. Co.*, 224 A.D.2d 231, 233-34 (App. Div. 1996). Courts have repeatedly held that corporate officers such as Bellmare and Freimuth cannot be held liable "for the mere negligent failure to discover misrepresentations made on the company's behalf." *Alter v. Audio-Rite Corp.*, 2011 NY Slip Op 33713(U), ¶¶ 9-10 (Sup. Ct.), *citing Marine Midland Bank, supra; DDJ Capital Mgmt., LLC v. Rhone Grp. L.L.C.*, 2008 NY Slip Op 50839(U), ¶ 11, 19 Misc. 3d 1124(A) (Sup. Ct.).

Furthermore, the case law cited by the NYAG only establishes that an officer or director of a corporation can be held personally liable for the fraudulent acts of their corporation, if they have actual knowledge that their corporation was engaging in fraudulent conduct. (*See,* NYAG's Opposition, R.Doc. 71 at 25-26). It is axiomatic that an officer or director of a corporation cannot be held personally liable for the fraudulent acts of other companies or corporations solely because those individuals may be aware of fraudulent conduct being committed by those separate and distinct companies.

5

The SAC alleges that Bellmare and Freimuth are officers of Debt Resolve (SAC, R.Doc. 41, ¶¶ 49, 50, 20, 207), but the NYAG is not seeking to hold Bellmare and Freimuth personally liable for direct, fraudulent acts of Debt Resolve. The SAC also alleges that Freimuth was an officer of Progress Advocates (SAC, R.Doc. 41, ¶¶ 50, 207), but the NYAG similarly does not seek to hold Freimuth personally liable for direct, fraudulent acts of Progress Advocates. As set forth in the separate Memoranda of Law filed by Debt Resolve, Bellmare and Freimuth (R.Doc. 58) and Defendants Progress Advocates and Student Loan Care (R.Doc. 61, pgs. 12-14), the SAC does not allege that Debt Resolve or Progress Advocates directly engaged in any fraudulent conduct. Rather, the SAC alleges that "student loan advisors" employed by other, separate entities were the individuals that committed fraudulent acts. Thus, the NYAG is seeking to hold Bellmare and Freimuth personally liable for the fraudulent acts allegedly performed by employees of companies that are separate and independent from Debt Resolve and Progress Advocates.

The NYAG also improperly seeks to hold Bellmare personally liable for the unspecified fraudulent acts that were allegedly committed by the "student loan advisors" employed by Defendant Student Loan Care, based on the fact that Bellmare allegedly oversaw the management of that entity. However, as the SAC does not allege any specific fraudulent conduct that Bellmare participated in, or was aware of and had the ability to control.

Based on the foregoing, the allegations in the SAC regarding Bellmare and Freimuth fail to satisfy the pleading standards of Rules 8 & 9(b) and fail to state a cause of action for personal liability against Bellmare and Freimuth for any of the causes of action stated in the SAC.

### III. THE NYAG FAILED TO ADEQUATELY PLEAD THAT DEBT RESOLVE IS LIABLE FOR THE ACTS OF ITS CO-DEFENDANTS

The SAC does not allege facts that are sufficient to hold Debt Resolve liable, on its own, for the alleged violations of each and every statute pled in the SAC. Thus, the NYAG alleges that

Debt Resolve can be held liable for the alleged acts its Co-Defendants: 1) because Debt Resolve was allegedly "a knowing participant a deceptive scheme," and; 2) because Debt Resolve was part of a "common enterprise" with the other Co-Defendants. Both theories of liability fail.

The only authority the NYAG cites to support the applicability of its first theory of liability is *FTC v. Leadclick Media, LLC*, 838 F.3d 158, 168 (2d Cir. 2016). However, *Leadclick* only addresses the standards that apply to section 5 of the Federal Trade Commission Act, 15 U.S.C. §45. *Id. Leadclick* does not address or set the standards that should be applied to N.Y. Executive Law §63(12), N.Y. G.B.L. §§ 349 & 350, or the other statues pled in the SAC, and has not been applied to those statues by other Courts. Thus, the *Leadclick* standard should not be applied to this matter. *See also, Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, at *89-91 (E.D.N.Y. 2015); *Finkel v. D.H. Blair & Co.*, 213 A.D.2d 588 (App. Div. 1995).

However, even if the *Leadclick* standard is applied, the SAC still fails to state a claim against Debt Resolve with regard to each and every cause of action. In order for Debt Resolve to be found liable for the acts of its Co-Defendants under the *Leadclick* standard, Debt Resolve must: 1) have knowledge of the fraudulent acts alleged, and 2) must either a) directly participate in the fraudulent scheme, or b) have the authority to control the fraudulent content at issue. *Leadclick* at 168. The SAC does not contain sufficient allegations to satisfy any of those elements.

The NYAG claims that Debt Resolve's knowledge is equivalent to the knowledge of its CEOs, Bellmare and Freimuth. (Plaintiff's Opposition, R.Doc. 71, pg. 17). However, as we explained above, the SAC does not allege that Bellmare and Freimuth had knowledge of any specific fraudulent acts of any of the Co-Defendants. While the SAC claims that complaints regarding Student Loan Care were sent to Bellmare by the NYAG after fraudulent acts allegedly occurred, notice of those complaints does not establish that Bellmare and/or Debt Resolve were

7

aware of the fraudulent acts at the time they occurred, and does not establish that those fraudulent acts continued after Bellmare and/or Debt Resolve were made aware of those fraudulent acts.

The SAC also fails to establish that Debt Resolve directly participated in the allegedly fraudulent conduct of the other Co-Defendants. The only direct conduct alleged in the SAC is Debt Resolve's alleged completion of student loan consolidation packages, which Defendants dispute. However, Debt Resolve did not engage in any fraudulent activity by allegedly completing those student loan consolidation packages. As the SAC does not allege that Debt Resolve was directly involved in the allegedly deceptive conduct that induced buyers to enter into contracts for those services, it does not allege any direct participation by Debt Resolve. *See, People v. Direct Revenue*, 2008 Slip Op 50845(U), 19 Misc. 3d. 1124(A), 872 N.Y.S.2d 816 (Sup. Ct. N.Y. Co. 2008). The NYAG attempts to distinguish the holding of *Direct Revenue* because it was decided on a motion for summary judgment, rather than a motion to dismiss. However, that does not diminish the logic or applicability of its holding to this matter.

The SAC similarly fails to allege that Debt Resolve had the authority to control the actions of Progress Advocates, Student Loan Care, or the other Co-Defendants. As the SAC explains that Progress Advocates and Student Loan Care were partially owned and operated by entities that were completely separate from, and unrelated to, Debt Resolve, it cannot be automatically assumed that Debt Resolve had the authority to control those two companies. Thus, to the extent the standard set forth in *Leadclick* can be applied to this matter, which the Moving Defendants dispute, the allegations in the SAC failed to satisfy that standard.

The NYAG's second theory of liability is that Debt Resolve can be held liable for the actions of every other Co-Defendant because it was allegedly part of a "common enterprise" with those Defendants. The only case that directly applies to Executive Law §63(12) cited by the

8

471258.1

NYAG in support of a "common enterprise" theory is *People v. Apple Health & Sports Clubs,* 80 N.Y.2d 803 (1992). However, the term "common enterprise" was never mentioned in *Apple*. In *Apple,* the complaint stated a cause of action against a company operating a health club and the company that owned it because they were "interlocking corporations" that commingled assets and had identical shareholders who "acted in concert in operating" the health club. *Id.* at 808.

Here, the SAC alleges that Progress Advocates and Student Loan Care are joint ventures with other companies that are unrelated to Debt Resolve. The SAC does not allege any commingling of assets with Debt Resolve and does not allege that the companies have identical shareholders. There are also no allegations that Debt Resolve acted in concert with Progress Advocates, Student Loan Care or any other Co-Defendants in the marketing or contracting aspects of the business that are the focus of the SAC. As the SAC fails to establish that Debt Resolve and its Co-Defendants were "interlocking corporations" that "acted in concert" to operate each individual business, it does not state a claim against Debt Resolve for the allegedly fraudulent and illegal activities of its Co-Defendants, based on the standard set forth in *Apple*.

The remaining cases cited by the NYAG to support the application of a "common enterprise" theory of liability apply primarily to the FTC Act. The NYAG has not cited any authority for the proposition that the "common enterprise" theory of liability set forth in those FTC cases has been, or can be, applied to the New York statues cited in the SAC, in the absence of any alleged violations of the FTC Act. To hold Debt Resolve directly liable for the acts of its subsidiary under New York law, the NYAG "must allege facts supporting an inference that the parent company engaged in the conduct at issue, and general, conclusory allegations are not sufficient." *Fage Dairy, supra.* (Plaintiffs' conclusory allegations that the entities "operated as a single integrated and common enterprise" was insufficient to state a claim). As the factors for the

"common enterprise" theory of liability asserted by the NYAG conflicts with the holdings in *Fage Dairy*, *Direct Revenue*, *Finkel* and *Apple*, those factors should not be applied in this matter.

However, if the "common enterprise" factors advocated by the NYAG are applied to this matter, the SAC still fails to state a cause of action against Debt Resolve. Based on the allegations in the SAC, Debt Resolve does not share officers or employees with the "Marketing Defendants," the "Financing Defendant" or the other "Owner Defendant," does not operate under common control with those Defendants, does not share offices with those Defendants, and does not commingle funds with those Defendants. Thus, there is absolutely no basis to hold Debt Resolve liable for the actions of those Defendants. The SAC also fails to establish that Debt Resolve engaged in the allegedly fraudulent conduct of Progress Advocates and Student Loan Care and does not establish the other elements necessary to establish that they were are part of a "common enterprise," for the reasons set forth above.

## IV. CONCLUSION

Defendants Debt Resolve, Bellmare and Freimuth respectfully request that the Court enter an Order dismissing Plaintiff's SAC in its entirety.

Dated: New York, New York
      March 8, 2019

CLAUSEN MILLER P.C.

By: _____
    Eric T. Krejci, Esq.
    Carl M. Perri, Esq.
    *Attorneys for Defendants*
    *Debt Resolve, Inc., Bruce Bellmare and*
    *Stanley E. Freimuth*
    28 Liberty Street, 39th Floor
    New York, New York 10005
    212.805.3900