# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by BARBARA D. UNDERWOOD, AG of the State of New York,<br><br>        Plaintiff,<br><br>      v.<br><br>HUTTON VENTURES, LLC; PROGRESS ADVOCATES, LLC; PROGRESS ADVOCATES GROUP, LLC; STUDENT ADVOCATES, LLC; STUDENT LOAN GROUP, LLC; STUDENT LOAN TEAM, LLC; STUDENT LOAN CARE, LLC; STUDENT LOAN SUPPORT, LLC; EQUITABLE ACCEPTANCE CORPORATION; BRUCE BELLMARE; and STANLEY E. FREUMUTH,<br><br>        Defendants. | Civil Action No.: 18-cv-09812-AJN |

**DEFENDANTS PROGRESS ADVOCATES GROUP, LLC, STUDENT ADVOCATES GROUP, LLC, STUDENT ADVOCATES TEAM, LLC, AND STUDENT LOAN SUPPORT, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**GORDON REES SCULLY MANSUKHANI LLP**
Peter G. Siachos, Esq.
Matthew P. Gallo, Esq.
One Battery Park Plaza, Floor 28
New York, NY 10004
Tel: (973) 549-2500
Fax: (973) 377-1911
E-mail: psiachos@grsm.com
E-mail: mgallo@grsm.com
*Attorneys for Defendants*
*Progress Advocates Group, LLC, Student Advocates Group, LLC,*
*Student Advocates Team, LLC, and Student Loan Support, LLC*

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| LEGAL ARGUMENT | | 1 |
| POINT I | THE AG'S COMPLAINT FAILS TO MEET THE APPLICABLE FED. R. CIV. P. 9(B) HEIGHTED PLEADING STANDARD | 1 |
| POINT II | THE AG IMPROPERLY ASSERTS THAT THE COMMON ENTERPRISE THEORY STANDS FOR THE PROPOSITION THAT THE AG HAS NO BURDEN TO PROVE HER ALLEGATIONS WITH ANY SPECIFICITY | 3 |
| POINT III | THE COMMON ENTERPRISE THEORY DOES NOT APPLY TO THE FACTS ASSERTED BY THE AG AND THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO HOLD PAG AND SLS LIABLE FOR THE ALLEGEDLY FRAUDULENT ACTS OF THE MARKETING DEFENDANTS | 4 |
| A. | The AG Fails To Adequately Plead That The Common Enterprise Theory Applies to PAG, SLS, and the Marketing Defendants' Relationship. | 4 |
| B. | The Complaint Utterly Fails To Show A Principal-Agency Relationship Between PAG, SLS, And The Marketing Defendants' Relationship or that PAG and SLS Ratified The Marketing Defendants' Allegedly Fraudulent Conduct. | 5 |
| POINT IV | THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD EACH AND EVERY CAUSE OF ACTION AGAINST PAG, SAT, SLS, AND SAT | 8 |
| CONCLUSION | | 11 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank v. Vivint Solar, Inc.*,
  2019 U.S. Dist. LEXIS 30638 (E.D.N.Y. Feb. 25, 2019) .......................................... 7

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,
  332 F. Supp. 3d 729 (S.D.N.Y. 2018) ......................................................................... 1

*Cooperative Agricole Groupement de Producteurs Bovins de l'Ouest v. Banesto Banking Corp.*,
  1989 U.S. Dist. LEXIS 8368 (S.D.N.Y. July 19, 1989) .............................................. 7

*FTC v. American Financial Benefits*,
  324 F. Supp.3d 1067 (N.D. Cal. 2018) ........................................................................ 3

*FTC v. AMG Servs.*,
  2012 U.S. Dist. LEXIS 183159 (D.C. Nev. Dec. 28, 2012) ........................................ 3

*FTC v. Medical Billers Network, Inc.*,
  543 F. Supp. 2d 283 (S.D.N.Y. 2008) ......................................................................... 9

*FTC v. OMICS Grp. Inc.*,
  302 F. Supp. 3d 1184 (D.C. Nev. 2017) ...................................................................... 3

*FTC v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) ....................................................................................... 9

*Hillis v. Equifax Consumer Services, Inc.*,
  237 F.R.D. 491 (N.D. Ga. 2006) ................................................................................. 8

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ......................................................................... 4

*Kolbeck v. Lit America, Inc.*,
  923 F. Supp. 557 (S.D.N.Y. 1996) .............................................................................. 5

*Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) ........................................................................................ 2

*People v. Apple Health & Sports Club*,
  80 N.Y.2d 803 (1992) .................................................................................................. 6

*People v. Credit Suisse Sec. (USA) LLC*,
  31 N.Y.3d 623 (N.Y. 2018) ......................................................................................... 2

*Saini v. Tonju Assocs.*,
   299 A.D.2d 244 (2002) ............................................................................................... 7

*United States ex rel. Di Pietro v. 21st Century Oncology Holdings, Inc.*,
   591 B.R. 134 (Bankr. S.D.N.Y. 2018) ........................................................................ 5

**Statutes**

15 U.S.C. § 1679a ............................................................................................................ 8

CPLR § 214(2) ................................................................................................................. 2

GBL § 349 ........................................................................................................................ 2

N.Y. EXECUTIVE LAW § 63(12) ............................................................................... 1, 2, 6

**Rules**

FED. R. CIV. P. 8 ........................................................................................................... 5, 9

FED. R. CIV. P. 9(b) ............................................................................................... 1, 2, 3, 5

## PRELIMINARY STATEMENT

Moving Defendants[1] submit this Reply Memorandum of Law in support of their Motion to Dismiss the New York Attorney General's Office's Second Amended Complaint ("Complaint"). The Moving Defendants dispute the factual allegations set forth in the Complaint and the New York Attorney General's Office's Opposition to Defendants' Motion to Dismiss. The New York Attorney General's Office ("AG") has failed to sufficiently assert her claims against Moving Defendants and, instead, relies on her bombastic Complaint in an attempt to survive the fact that she has not asserted her claims with the requisite particularity and specificity. If the Court accepts the truth of the AG's allegations contained in the Complaint for the limited purpose of this Rule 12(b)(6) motion, the Complaint must be dismissed for the reasons stated in the Moving Defendants' Memorandum of Law (R.Doc. 80) and as set forth below.

## LEGAL ARGUMENT

### POINT I

### THE AG'S COMPLAINT FAILS TO MEET THE APPLICABLE FED. R. CIV. P. 9(B) HEIGTHED PLEADING STANDARD

The New York Attorney General's Office ("AG") does not dispute that the heightened pleading standard of FED. R. CIV. P. 9(b) must be applied if a cause of action is based, in part, on common law fraud or equitable fraud. The AG cites case law that Rule 9(b)'s pleading standard applies to claims under N.Y. Executive Law § 63(12) when the underlying basis for those claims is fraud or a fraudulent scheme, opposed to mere deception. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 769 (S.D.N.Y. 2018) (the Court concluded that the underlying conduct was premised on Defendant's deceptive acts rather than a fraudulent scheme);

---

[1] Progress Advocates Group, LLC ("PAG"), Student Advocates Group, LLC ("SAG"), Student Advocates Team, LLC ("SAT"), and Student Loan Support, LLC ("SLS") (collectively, "Moving Defendants").

*Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (Plaintiff alleged that Defendant deceptively represented that it would provide nutritional information in-store, the Court found that this type of action under GBL § 349 did not require the Plaintiff to meet heightened Rule 9(b) standard.). However, throughout the AG's Complaint and Opposition, the AG alleges that the Moving Defendants participated in fraudulent activities or are liable for the fraudulent acts of others. Furthermore, the AG's Opposition to Defendants' Motion to Dismiss reiterates the allegations of fraud in the Complaint, stating that the Complaint adequately alleges that each Defendant had knowledge of alleged fraudulent acts and should be held liable for these acts and practices of Co-Defendants. Since the AG has explicitly stated that the basis of this action concerns all defendants "engaging in… fraudulent… conduct… [and] [that] Defendants have formed new entities and relationships over time to carry out this scheme[,]" the AG must meet the heightened pleading standard. *See* Second Amended Complaint ("Compl.") ¶ 3.

Furthermore, the AG seeks damages for the allegedly fraudulent conduct of defendants, some instances of which extend back to at least 2013, more than five years prior to when the Initial Complaint in this matter was filed in New York State court. *See* R.Doc. 41. As the statute of limitations for Executive Law § 63(12) claims *not* based on actual or equitable fraud is only three years, if the AG was truly seeking damages for deceptive acts or practices and was not basing her claims on actual or equitable fraud, many of her causes of action in the Complaint are partially time-barred. *See* CPLR 214(2); *People v. Credit Suisse Sec. (USA) LLC*, 31 N.Y.3d 623, 638¬41 (N.Y. 2018). The AG cannot seek to avoid the higher pleading standards of Rule 9(b) and simultaneously take advantage of the longer statute of limitations that applies to claims that are premised on actual or equitable fraud.

As virtually every cause of action in the AG's Complaint is entirely based on or

contemplates the allegedly fraudulent conduct of defendants, the heightened pleading standard of Rule 9(b) should apply. If the Court determines that Rule 9(b) does not apply because actual or equitable fraud has not been alleged, those causes of action must be limited by the applicable statute of limitations.

## POINT II

### THE AG IMPROPERLY ASSERTS THAT THE COMMON ENTERPRISE THEORY STANDS FOR THE PROPOSITION THAT THE AG HAS NO BURDEN TO PROVE HER ALLEGATIONS WITH ANY SPECIFICITY

The AG attempts to invoke the common enterprise theory to overcome the fact that she has failed to sufficiently attribute and describe the allegedly wrongful acts in the Complaint. However, as the Complaint fails to purport any facts that the Moving Defendants share any common ownership, shareholders, employees, or any comingling of assets, the common enterprise theory does not apply to the Moving Defendants. Moreover, the AG cannot invoke such a theory merely to relieve herself of the burden to plead her claims with sufficient specificity.

The AG fails to note that the common enterprise theory is not a 'free pass' for plaintiffs, rather, it is a relaxed standard the Court will allow when a plaintiff "is reasonably unable to obtain specific knowledge at the pleading stage regarding the particularized conduct of each defendant in the alleged corporate fraud." *FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184, 1195 (D.C. Nev. 2017);[2] *see also FTC v. AMG Servs.*, 2012 U.S. Dist. LEXIS 183159, *9 (D.C. Nev. Dec. 28, 2012)("[C]ourts may relax Rule 9(b)'s particularity requirements in circumstances where it may be difficult for the plaintiff to identify the specific actions that a corporate officer took in causing the harm to the plaintiff."). The AG has offered no argument whatsoever asserting that she has

---

[2] In her Opposition, the AG cited to *FTC v. American Financial Benefits*, 324 F. Supp.3d 1067, 1079 (N.D. Cal. 2018) for a proposition explicitly stated to derive from *OMICS* without noting that it is a relaxed standard that cannot be applied without reason. *See* Opp. pg. 9.

failed to understand each Defendants' specific actions in the alleged scheme. Significantly, she has now filed an Initial Complaint, a First Amended Complaint, and Second Amended Complaint in this action, which provide 364, 389, 431 assertions respectively. Rather than concluding that the AG has a lack of knowledge and she requires the Court to allow her to invoke the common enterprise theory, it would appear that the AG has a wealth of information and should not be allowed to avoid her burdens under Rule 9(b).

## POINT III

### THE COMMON ENTERPRISE THEORY DOES NOT APPLY TO THE FACTS ASSERTED BY THE AG AND THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO HOLD PAG AND SLS LIABLE FOR THE ALLEGEDLY FRAUDULENT ACTS OF THE MARKETING DEFENDANTS

**A. The AG Fails To Adequately Plead That The Common Enterprise Theory Applies to PAG, SLS, and the Marketing Defendants' Relationship.**

The AG fails to set forth sufficient facts to hold PAG and SLS liable for the allegedly fraudulent marketing activity alleged committed by the Marketing Defendants. However, the AG asserts in her Opposition that the individual conduct of each defendant is "irrelevant… as long as the defendant was part of the enterprise and the enterprise engaged in wrongdoing[.]" Opposition to Defendants' Motion to Dismiss ("Opp.") pg. 15. Additionally, the AG claims that PAG and SLS are liable under agency law. *Id*. The AG's Opposition is bereft of the facts allegedly contained the Complaint supporting either of these theories.

Even if the common enterprise theory did apply in these circumstances, the AG has still failed to sufficiently show that PAG and SLS could be liable for violations of the statutes. The Complaint did not allege that PAG and SLS shared officers, shareholders, operate common control or comingle their funds with the Marketing Defendants. *See in re Amaranth Natural Gas Commodities Litig*., 587 F. Supp. 2d 513, 538-39 (S.D.N.Y. 2008) (holding plaintiff "[f]ailed to

plead commingling of funds or any shared use of resources that would permit the application of the [common enterprise] doctrine.").

Rather, the AG points to her allegations that PAG, SLS, and the Marketing Defendants were "interrelated companies" and worked "in collaboration[,]" merely attempting to reiterate the confines of the law, and utterly failing to show that PAG and SLS exercised direct involvement over the marketing activities of the Marketing Defendants. Furthermore, while the AG pleads that PAG, SLS, and the Marketing Defendants all have the same "principal place of business,", this alone cannot support a common enterprise theory. As the AG fails to adequately plead that the defendants shared officers, shareholders, operate common control or comingle their funds, her common enterprise theory fails.

**B. The Complaint Utterly Fails To Show A Principal-Agency Relationship Between PAG, SLS, And The Marketing Defendants' Relationship or that PAG and SLS Ratified The Marketing Defendants' Allegedly Fraudulent Conduct.**

The AG attempts to argue that agency law should be applied to the relationship between PAG, SLS, and the Marketing Defendants. The AG's baseless attempt to snare PAG and SLS under this theory contains multiple deficiencies. First, the AG must meet the heightened Rule 9(b) standard when pleading that PAG and SLS are liable for the allegedly fraudulent activities of the Marketing Defendants. *See United States ex rel. Di Pietro v. 21st Century Oncology Holdings, Inc.*, 591 B.R. 134, 143 (Bankr. S.D.N.Y. 2018) (collecting cases) ("where the agency relationship is central to a fraud claim it needs to be plead with particularity under Rule 9(b)."); *see also Kolbeck v. Lit America, Inc*., 923 F. Supp. 557, 569 (S.D.N.Y. 1996) (requiring that agency be plead with particularity under Rule 9(b) where an apparent agency relationship was an integral element of the alleged fraud).

Irrespective of the heightened Rule 9(b) standard, the Complaint fails to meet even the Rule

8 pleading standard. First, the AG asserts that PAG and SLS shared offices and personnel with the Marketing Defendants. Opp. pg. 6. However, the AG cites to paragraph 69 of the Complaint, which refers to paragraphs 20-51 and then redundantly cites to paragraphs 25, 27-28, and 30-31 of which contain *absolutely no allegations* that PAG and SLS shared personnel with the Marketing Defendants. *Id*. Given that this is the AG's *second* attempt to plead sufficient facts to support her claims had she wanted to purport this aspect of agency law, one would think she would have done so in one of her two amendments. Additionally, that fact that PAG, SLS, SAT, Student Advocates, and SAG list their principal place of business as the same location is not enough to show a level of common enterprise.

Moreover, the AG states in her Opposition that the Marketing Defendants handled sales and marketing for PAG and SLS, they had authority to enter into contracts. *See* Opp. pg. 15-16. Additionally, the AG alleges that PAG and SLS used the Student Loan Advisors, and provided the Marketing Defendants with contracts for the borrowers to sign. *Id*. However, these general allegations fail in two respects. First, they are often not actually stated in the Complaint and, second, even if they were, they fail to show the level of day-to-day involvement and control considered when utilizing the common enterprise theory. *See* Opp. pg. 15-16. The AG makes no allegation that PAG, SLS, and the Marketing Defendants were "interlocking corporations." *See People v. Apple Health & Sports Club*, 80 N.Y.2d 803 (1992) (the only case cited by Plaintiff which applied Executive Law § 63(12) and found an agency relationship concerned companies that were 'interlocking," comingled assets, and used identical shareholders who acted in concert when operating the company.).

Finally, the fact that PAG and SLS may have benefited from the Marketing Defendants' activity does not automatically suggest that PAG and SLS ratified the Marketing Defendants'

8 pleading standard. First, the AG asserts that PAG and SLS shared offices and personnel with the Marketing Defendants. Opp. pg. 6. However, the AG cites to paragraph 69 of the Complaint, which refers to paragraphs 20-51 and then redundantly cites to paragraphs 25, 27-28, and 30-31 of which contain *absolutely no allegations* that PAG and SLS shared personnel with the Marketing Defendants. *Id*. Given that this is the AG's *second* attempt to plead sufficient facts to support her claims had she wanted to purport this aspect of agency law, one would think she would have done so in one of her two amendments. Additionally, that fact that PAG, SLS, SAT, Student Advocates, and SAG list their principal place of business as the same location is not enough to show a level of common enterprise.

Moreover, the AG states in her Opposition that the Marketing Defendants handled sales and marketing for PAG and SLS, they had authority to enter into contracts. *See* Opp. pg. 15-16. Additionally, the AG alleges that PAG and SLS used the Student Loan Advisors, and provided the Marketing Defendants with contracts for the borrowers to sign. *Id*. However, these general allegations fail in two respects. First, they are often not actually stated in the Complaint and, second, even if they were, they fail to show the level of day-to-day involvement and control considered when utilizing the common enterprise theory. *See* Opp. pg. 15-16. The AG makes no allegation that PAG, SLS, and the Marketing Defendants were "interlocking corporations." *See People v. Apple Health & Sports Club*, 80 N.Y.2d 803 (1992) (the only case cited by Plaintiff which applied Executive Law § 63(12) and found an agency relationship concerned companies that were 'interlocking," comingled assets, and used identical shareholders who acted in concert when operating the company.).

Finally, the fact that PAG and SLS may have benefited from the Marketing Defendants' activity does not automatically suggest that PAG and SLS ratified the Marketing Defendants'

allegedly wrongful conduct. "Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized [conduct]." *Bank v. Vivint Solar, Inc.*, 2019 U.S. Dist. LEXIS 30638, *12 (E.D.N.Y. Feb. 25, 2019); *see also Cooperative Agricole Groupement de Producteurs Bovins de l'Ouest v. Banesto Banking Corp.*, 1989 U.S. Dist. LEXIS 8368, * 51 (S.D.N.Y. July 19, 1989) (The plaintiff misconstrued the doctrine of ratification when they failed to "demonstrate[] that any of the defendants were aware of the material facts of the transaction -- i.e. the fraudulent acts[.]"). Not only must the AG plead facts sufficient to establish the alleged agency relationship, but she must also clearly assert that PAG and SLS accepted the benefit with "full knowledge" of the allegedly wrongful acts of the Marketing Defendants. *Id*.; *see also Saini v. Tonju Assocs*., 299 A.D.2d 244 (where the Defendant was unaware of the third-party's allegedly wrongful conduct and the Court held that "the mere presence of [the third-party's] personnel on the premises [was] not, in our view, sufficient to raise an issue of fact as to whether they supervised or controlled [the third-party's] work[.]").

The Complaint fails to present any fact that PAG and SLS had any knowledge, let alone full knowledge, of the Marketing Defendants' allegedly wrongful conduct. As such, the AG's argument that PAG and SLS ratified this conduct is entirely unfounded and irrelevant.

Based on the preceding, the AG has failed to plead a "common enterprise" between PAG and SLS and the Marketing Defendants. Furthermore, the AG fails to plead a principal-agency relationship between PAG and SLS and the "Marketing Defendants." The Complaint fails to purport a basis to find PAG and SLS liable for the allegedly fraudulent activity of the Marketing Defendants and, as such, the claims must be dismissed.

## POINT IV

## THE COMPLAINT FAILS TO SUFFICIENTLY PLEAD EACH AND EVERY CAUSE OF ACTION AGAINST PAG, SAT, SLS, AND SAT

With regard to Count VI, the AG asserts that PAG and SLS provided loans to borrowers that charged usurious interest rates. To support this, the AG cites to paragraphs 85 and 130-32 of the Complaint. *See* Opp. pg. 17. Remarkably, those allegations do not reference usurious interest rates whatsoever, while Paragraph 85 fails to even mention charged interest. Furthermore, paragraphs 130-32 merely state that "Equitable and/or its Contracting Defendant Partners" charged certain interest rates without actually alleging that PAG or SLS actually charged or collected these usurious interest rates.

The AG fails to sufficiently plead or articulate Counts VII through X and why the Moving Defendants should be liable under credit repair statutes as she does not mention the actual services Moving Defendants offer in relation to credit report services. Individuals, entities, and/or corporations "are credit repair organizations if they (1) used any instrumentality of interstate commerce, or the mails, to (2) sell, provide, or perform (or represent that they could do so) (3) in return for valuable consideration (4) services or advice about services (5) *for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating*." *Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 511 (N.D. Ga. 2006) (specifically interpreting 15 U.S.C. § 1679a(3)) (emphasis added). Here, the AG has not alleged that the Moving Defendants accepted any consideration from borrowers or provided any service or advice *for the express or implied purpose* of improving Plaintiffs' credit record, credit history or credit rating. As such, Counts VII through X must be dismissed as to the Moving Defendants.

The AG alleges in her Opposition that Counts XI through XIV are sufficient as to PAG and SLS due to the AG's theories of common enterprise and agency. *See* Opp. pg. 20. As discussed above, the AG has shown she is entirely unable to point to allegations in the Complaint

to implicate either of those theories. Furthermore, even if either theory was implicated here, the legal authority the AG relies on is inconsistent with the circumstances alleged in the Complaint.[3] The AG failed to note the principal-agent relations found in *FTC v. Stefanchik*, which arose from conduct that was so intertwined that "consumers often perceived [the telemarketer] and his company as one seamless operation." 559 F.3d 924, 930-31 (9th Cir. 2009). At best, the AG has alleged that PAG and SLS work in the same location in the Complaint, the fact of which fails to meet the standards required for common enterprise and agency law and is easily distinguishable from the inseparable relationship present in *Stefanchik*.

Furthermore, the AG argues that SAT and SAG are telemarketers who engaged in wrongful conduct without actually identifying *any* specific telemarketing activities performed by SAT and SAG that falls within the confines of the statutes. Finally, the fact that the AG failed to allege a connection between SAT, SAG, and the Student Loan Advisors cannot be understated. The Court cannot create allegations in the Complaint for the AG where there is no basis. The AG has failed to provide allegations supporting her contentions and, as such, the Court must dismiss these causes of action.

The AG has failed to sufficiently plead Count XV of the Complaint. Although she asserts that she needs discovery to add the requisite specificity to her claims, her position defeats the purpose of Rule 8. Her excuse is further undermined by the fact that she possesses the Equitable contracts underlying the Complaint and alleges that Equitable is responsible for the disclosures it made in those contracts. As the AG has failed to identify the alleged PAG and SAT issued loans and their concomitant disclosures, the AG has failed to plead cognizable claims against them.

---

[3] *See FTC v. Medical Billers Network, Inc*., 543 F. Supp. 2d 283 (holding that a principal was liable for the act of its agent where the consumer thought they were actually speaking to the principal's corporation and the principal instructed the agent to state they were calling from the principal's company.).

The AG argues that Count XVI is sufficiently pleaded because abstract and unrelated contentions found in the Complaint could potentially allow one to infer that PAG or SAT *may be* the party to whom the debt is owed. *See* Opp. pg. 24. While all factual allegations contained in the Complaint are taken as fact when considering a motion to dismiss, there are no allegations for the Court to even consider in relation to PAG and SAT's alleged conduct under this count.

Count XVIII does not adequately plead a cause of action against PAG and SAT as the facts the AG has asserted fail to show that PAG and SAT participated in drafting or issuing the contracts in such a way that they would be liable under New York's Retail Instalment Sales Act, Personal Property Law. Nowhere in the Complaint does the AG allege that PAG and SAT were engaged in the formation of the Equitable contracts yet the AG declares, based on her interpretation of the law, that any alleged violations within Equitable financing agreements should be attributed to PAG and SAT as well for their remote position as the supplier of a good or service.

## CONCLUSION

Defendants Progress Advocates Group, Student Advocates Group, Student Advocates Team, and Student Loan Support, respectfully request that the Court enter an Order dismissing Plaintiff's Complaint in its entirety.

Dated: April 15, 2019
       New York, New York

**GORDON REES SCULLY MANSUKHANI LLP**
*Attorneys for Defendants*
*Progress Advocates Group, LLC, Student*
*Advocates Group, LLC, Student Advocates Team,*
*LLC, and Student Loan Support, LLC*

By:  */s/ Peter G. Siachos*
       Peter G. Siachos, Esq.
       Matthew P. Gallo, Esq.

One Battery Park Plaza, Floor 28
New York, NY 10004
Tel: (973) 549-2500
Fax: (973) 377-1911
E-mail: psiachos@grsm.com
E-mail: mgallo@grsm.com