UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York,



AUG 1 2 2019

                              Plaintiff,

       -against-                            Case No. 18-cv-9812 (AJN)

DEBT RESOLVE, INC.; HUTTON VENTURES, LLC;
PROGRESS ADVOCATES, LLC; PROGRESS ADVOCATES
GROUP, LLC; STUDENT ADVOCATES, LLC; STUDENT
ADVOCATES GROUP, LLC; STUDENT ADVOCATES
TEAM, LLC; STUDENT LOAN CARE, LLC; STUDENT
LOAN SUPPORT LLC; EQUITABLE ACCEPTANCE
CORPORATION; BRUCE BELLMARE; and STANLEY E.
FREIMUTH,

                         Defendants.
------------------------------------------------------------X

## [PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER AS TO EQUITABLE ACCEPTANCE CORPORATION

      Plaintiff, the People of the State of New York by Letitia James, Attorney General of the State of New York ("NYAG"), commenced this civil action (the "Action") in New York County Supreme Court on September 20, 2018 to obtain injunctive and monetary relief and civil penalties from the named Defendants, including Equitable Acceptance Corporation ("Equitable"). Equitable removed the Action to this Court on October 24, 2018 pursuant to 28 U.S.C. § 1446(a), and the NYAG did not move to remand.

      Plaintiff and Equitable (collectively, the "Parties," and each, a "Party") agree to the entry of this Stipulated Final Judgment and Order (the "Order") to settle and resolve all claims raised against Equitable in this Action. The NYAG's case against the eleven other Defendants will continue.

# FINDINGS

1. This Court has jurisdiction over the Parties and the subject matter of this Action under 28 U.S.C. §§ 1331 and 1367(a).

2. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2).

3. The Second Amended Complaint, ECF No. 41, (the "Complaint") alleges that, in connection with financing student loan debt relief services, Equitable violated the following laws: New York Executive Law § 63(12); New York General Business Law ("GBL") §§ 349 and 350; New York usury law, New York Banking Law § 14-a and New York General Obligations Law § 5-501; the Federal Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*; the New York credit repair law, GBL Article 28-BB; the Telemarketing Sales Rule ("TSR"), 16 C.F.R § 310 *et seq.*; the New York telemarketing law, GBL § 399-pp; the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; New York licensing laws governing lenders and sales finance companies, New York Banking Law §§ 340, 492; and the New York Retail Instalment Sales Act, New York Personal Property Law § 401 *et seq.*

4. Equitable neither admits nor denies any of the allegations of the Complaint, except as specified in this Order. Equitable admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this Action.

5. Each Party waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

6. Entry of this Order is in the public interest.

## DEFINITIONS

7.  The following definitions apply to this Order.

8.  **"Advance Fee"** means any payment, whether full or partial, or any amount of money taken from or paid by a consumer prior to the completion of all work that was expressly or impliedly promised to that consumer.

9.  **"Assisting Others"** or **"Assist Others"** includes:

    a. performing customer service functions, including receiving or responding to consumer complaints;

    b. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email or other electronic communication;

    c. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    d. providing names of, or assisting in the generation of, potential consumers;

    e. performing marketing, billing, or payment services of any kind; and/or

    f. acting or serving as an owner, officer, director, manager, or principal of any Entity.

10. **"Consumer Reporting Agency"** or **"CRA"** shall mean any person or Entity which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole

or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

11. **"Debt"** means any obligation or alleged obligation of a consumer to pay money, whether or not such obligation has been reduced to judgment.

12. **"Debt Relief Products and Services"** means any service, product, plan, or program between a consumer and one or more secured or unsecured creditors or debt collectors which expressly or impliedly is represented to do any one or more of the following with respect to a mortgage, loan, Debt, or obligation (and including but not limited to a loan, Debt, or obligation provided for the purpose of funding education of any kind, whether that loan was issued by the federal government or a private lender):

   a. stop, prevent, or postpone any mortgage or deed of foreclosure sale for a person's dwelling, any other sale of collateral, any repossession of a person's dwelling or other collateral, or otherwise save a person's dwelling or other collateral from foreclosure or repossession;

   b. negotiate, enable, obtain, or arrange a modification, or renegotiate, settle, or in any way alter the terms of a Debt, mortgage, obligation or loan, including but not limited to a reduction in the amount of interest, the principal balance, the amount of monthly payments or fees owed;

   c. negotiate, enable, obtain, or arrange any forbearance, deferment, postponement, or modification in the timing of payments on a Debt, mortgage, obligation, or loan;

   d. negotiate, enable, obtain, or arrange any extension of the period of time within which a consumer may (i) cure his or her default on a mortgage, loan, Debt, or

obligation, (ii) reinstate his or her mortgage, loan, Debt or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate a mortgage, loan, Debt, or obligation or redeem a dwelling or other collateral;

e. obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral;

f. negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage loan, Debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder;

g. negotiate, enable, obtain, or arrange the restructuring or consolidation of Debts, obligations, or loans, or otherwise combine or separate in any way Debts, obligations, or loans;

h. negotiate, enable, arrange or facilitate complete or partial forgiveness of Debts, obligations, or loans;

i. negotiate, enable, arrange or facilitate application, enrollment, or re-certification in a student loan repayment plan;

j. repay or cause to be repaid any loan, Debt, or obligation;

k. stop, prevent, or postpone any default on Debts, obligations, or loans; and/or

l. submit or cause to be submitted any application, form, statement, or other paperwork to the U.S. Department of Education or a loan servicer that will affect the loan, obligation or Debt in any way.

13. **"Effective Date"** means the date on which this Order is entered on the docket.

14. **"Entity"** means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

15. **"Financing"** means a loan, advance, retail instalment contract, obligation or credit agreement, or any provision of cash, credit, or money in any form on behalf of a consumer.

16. **"New York Debt Relief Borrower"** means any consumer (i) who entered into a Financing contract for the purchase of Debt Relief Products and Services from any Seller; (ii) who resided in New York State either at the time they entered into that Financing contract or at any time since; and (iii) for whom Equitable now holds that Financing contract either as the creditor or as an assignee of the original creditor.

17. **"Seller"** means an Entity or person that provides goods or services which are purchased with Financing.

## ORDER

18. Except for paragraphs 32-37, all parts of this Order shall be binding on and apply to Equitable and its principals, officers, employees, successors, assigns, servants, agents, attorneys, merged or acquired entities, wholly-owned subsidiaries, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly.

I.  **Prohibition on Unlawful Acts**

**IT IS ORDERED THAT:**

19. Equitable shall not engage in violations of the following laws: New York Executive Law § 63(12); GBL §§ 349 and 350; Federal CROA 15 U.S.C. § 1679 *et seq.*; the New York credit repair law, GBL Article 28-BB; the TSR, 16 C.F.R § 310 *et seq.*; the New York telemarketing law, GBL § 399-pp; TILA, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. Part 1026; and the New York Retail Instalment Sales Act, New York Personal Property Law § 401 *et seq.*

20. Equitable shall not charge interests rates, finance charges, or any other kind of fee or charge in violation of New York usury laws, New York Banking Law § 14-a, New York General Obligations Law § 5-501, and New York Penal Law § 190.42.

21. Equitable shall comply with New York's licensing requirements set forth in New York Banking Law §§ 340 and 492.

II. **Ban on Activities Regarding Debt Relief Products and Services**

**IT IS FURTHER ORDERED THAT:**

22. Equitable is permanently restrained and enjoined from the following with respect to any Debt Relief Products and Services to be offered, provided, or sold to any New York consumer:

    a. providing Financing for or Assisting Others in Financing the purchase thereof;

    b. acting as an assignee or holder of contracts Financing the purchase thereof;

    c. advertising, marketing, promoting, offering for sale, or selling thereof; and

    d. Assisting Others in the advertising, marketing, promoting, offering for sale, or selling thereof.

### III. Prohibition on Deceptive Practices and False Advertising

**IT IS FURTHER ORDERED THAT:**

23. Equitable shall not misrepresent, expressly or impliedly, or Assist Others in misrepresenting, expressly or impliedly, the following:

   a. a New York consumer's right to assert claims or defenses against Equitable that the consumer has against the Seller;

   b. any material aspect of the Financing provided, marketed, or offered to a New York consumer, including but not limited to the following:

      i. whether the Financing is open-end or close-end as those terms are defined under TILA, 15 U.S.C. § 1601 *et seq.*;

      ii. closing costs or other fees;

      iii. the payment schedule, monthly payment amount(s), or any balloon payment;

      iv. the interest rate(s) or annual percentage rate(s) or finance charge(s), credit service charge(s), or time sale price(s) (including but not limited to whether they are fixed or adjustable);

      v. the loan amount, cash sale price, principal balance, time balance, credit amount, draw amount, or outstanding balance;

      vi. the loan or repayment term, draw period, or maturity, or any other terms of credit;

      vii. the amount of cash to be disbursed to the consumer out of the proceeds of any loan or Financing, or the amount of cash to be disbursed on behalf of the consumer to any third parties;

      viii. whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; and

      ix. that the credit does not have a prepayment penalty or whether subsequent refinancing may trigger a prepayment penalty and/or other fees;

c. the nature or any material term of any product, service, plan, or program advertised, marketed, or offered for sale to New York consumers, including but not limited to:

      i. total costs, any material restrictions, limitations, or conditions, or any material aspect of performance, efficacy, nature, or central characteristics;

      ii. the nature, expertise, position, or job title of any person or Entity who provides any such product, service, plan or program; and

      iii. that any person or Entity is affiliated with, endorsed or approved by, or otherwise connected to any other person or Entity, government entity, public, non-profit, or other noncommercial program, or any other program;

d. any refund cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

e. the ability to improve or otherwise affect a New York consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a New York consumer's credit record, credit history, credit rating, or ability to obtain credit

can be improved by removing current, accurate negative information from the New York consumer's credit record or history; and

 f. that a New York consumer will receive legal representation.

### IV. Required Disclosures

**IT IS FURTHER ORDERED THAT:**

24. When extending a fixed amount of credit that a New York consumer is to repay in one or more installment(s), Equitable shall disclose in writing, clearly and conspicuously, and in a form that the consumer may keep, and before the consumer signs the credit agreement, the following information a manner reflecting the terms of the legal obligation offered to the consumer:

 a. The identity of the creditor;

 b. The amount financed;

 c. The finance charge;

 d. The annual percentage rate;

 e. The payment schedule; and

 f. The total of payments.

### V. Prohibition on Collecting from New York Debt Relief Borrowers and Required Consumer Notice

**IT IS FURTHER ORDERED THAT:**

25. Equitable is permanently restrained and enjoined from collecting, attempting to collect, or assigning any right to collect payment from any New York Debt Relief Borrower.

26. Equitable shall not sell, assign, or otherwise transfer any Debts owed or purportedly owed by New York Debt Relief Borrowers or any Financing contracts, agreements or arrangements signed by New York Debt Relief Borrowers.

10

27. Within ten (10) days of the Effective Date, Equitable shall request that each Consumer Reporting Agency to which New York Debt Relief Borrowers' Debt has been reported delete the Debt from all New York Debt Relief Borrowers' credit reporting files.

28. Within twenty (20) days of the Effective Date, Equitable shall mail each New York Debt Relief Borrower a written notice in a form approved by the NYAG containing the following information:

   a. that Equitable had extended credit to the consumer in connection with a purchase that the consumer had made of student-loan related services, and identifying the specific Seller from which the consumer made the purchase;

   b. any outstanding amount of the Debt owed by the New York Debt Relief Borrower under each Financing agreement or arrangement held by Equitable at the time the notice is sent;

   c. that, pursuant to an agreement with the New York Attorney General's Office, Equitable will not collect or attempt to collect on any outstanding Debt that the New York Debt Relief Borrower incurred as a result of Equitable's Financing agreement or arrangement;

   d. that Equitable shall not sell, assign, or otherwise transfer any Debt owed or purportedly owed to Equitable by the New York Debt Relief Borrower or any Financing agreement or arrangement signed by the New York Debt Relief Borrower;

   e. that Equitable shall not report the New York Debt Relief Borrower's Debt to any CRA and that for each CRA to which Equitable has previously reported

11

information about the consumer's account with Equitable, Equitable has requested that the CRA delete the account from the consumer's credit report;

    f.  the name and contact information for each CRA to which Equitable submitted a request to delete the Debt from the consumer's credit reporting file, and the date on which each such request was sent;

    g.  in bold at the top of the notice, for students who were enrolled in federal student loan payment assistance programs offered by the U.S. Department of Education, that the consumer may be required each year to re-certify eligibility by providing certain information to the U.S. Department of Education and that the consumer should consult with his or her student loan servicer and the U.S. Department of Education's website to determine any steps he or she must take to remain eligible for such programs;

    h.  that to determine the identity of his or her student loan servicer(s), a consumer can visit My Federal Student Aid at https://studentaid.ed.gov/sa/login; and

    i.  contact information for the New York Attorney General's Office, should the New York Debt Relief Borrower have questions about the terms of this Order.

29.    Nothing else shall be sent in combination with the mailing of this notice and such mailing shall be sent to the most recently available postal address according to Equitable's records. The envelope containing the notice shall contain the words "Settlement with the New York Attorney General Office that may benefit you."

30.    If any notice sent pursuant to paragraph 28 is returned to the sender due to an incorrect address, Equitable shall perform reasonable research to determine the consumer's

current address and send one additional copy of the notice to the consumer at any new address found.

### VI. Equitable's Obligations Regarding Consumer Information

**IT IS FURTHER ORDERED THAT:**

31. Equitable is permanently restrained and enjoined from directly or indirectly disclosing, using or benefitting from any information relating to any New York Debt Relief Borrower that Equitable obtained prior to entry of this Order, including the name, address, telephone number, email address, social security number, FSA ID, or other identifying information, or any data that enables access to a consumer's account (including a student loan account, credit card, bank account, or other financial account).

### VII. Monetary Judgment

**IT IS FURTHER ORDERED THAT:**

32. By reason of the violations of law alleged in the Complaint, judgment in the amount of $1,665,103 is hereby entered in favor of the NYAG against Equitable. The balance of $1,665,103 shall be suspended upon Equitable making payment of $225,000, subject to the provisions below.

33. Equitable shall pay $150,000 within seven (7) days of the Effective Date and the remaining $75,000 within sixty (60) days of the Effective Date.

34. Equitable shall make such payments via wire transfer. The wire transfer shall be payable to the "State of New York," reference this Order, and be addressed to the attention of Stewart Dearing, Assistant Attorney General at the New York State Attorney General's Office, Bureau of Consumer Frauds and Protection, 28 Liberty Street, New York, New York 10005.

35. The NYAG may use the monetary relief paid pursuant to paragraph 33 for restitution, penalties or costs, in its sole discretion.

36. The NYAG's agreement to the suspension of part of the judgment is expressly premised on Equitable's compliance with the terms of this Order; its truthful disclosure of information and documents to the NYAG; and its timely payment of the amounts provided for in paragraph 33. The suspension of the judgment will be lifted if, upon motion by the NYAG, the Court finds that Equitable has materially violated the terms of this Order; that Equitable failed to timely pay the full amounts provided in paragraph 33; or that Equitable made any misstatement or material omission in the documents and information provided to the NYAG.

37. If the suspension of the judgment is lifted, the full amount of the judgment set forth in paragraph 32 becomes immediately due, less any payment previously made by Equitable to the State of New York, plus interest computed from the Effective Date of this Order pursuant to 28 U.S.C. § 1961.

**VIII. Compliance and Reporting Requirements**

**IT IS FURTHER ORDERED THAT:**

38. Equitable shall fully cooperate with the NYAG in this Action and any NYAG investigation related to or associated with the conduct that is the subject of the Complaint. Equitable shall provide discovery, including information, documents, testimony, and other evidence, in this Action reasonably requested by the NYAG.

39. Within sixty (60) days after the Effective Date, Equitable shall provide the NYAG with a document listing the names, addresses, telephone numbers, email addresses and any other contact information of each New York Debt Relief Borrower whose Debt was subject to forbearance in accordance with paragraphs 25-26 above. For each New York Debt Relief

Borrower's entry on the list, the document shall also detail the amount of the Debt that was outstanding at the time of forbearance, and the amount the consumer already paid to Equitable.

40. For one year from the Effective Date, Equitable shall keep (a) all contact information for each consumer to whom Equitable was required to send the notice described above in paragraph 28, and (b) copies of the notices sent to consumers, including but not limited to any template notice. Equitable shall provide copies of the notices sent to consumers pursuant to this Order upon the NYAG's request.

41. Equitable shall also provide sufficient information about New York consumers to enable the NYAG to efficiently administer relief or redress called for by this Order. If a representative of the NYAG requests in writing any information related to relief or redress for New York consumers, Equitable shall provide it, in the form prescribed by the NYAG, within fourteen (14) days.

42. Within ninety (90) days of the Effective Date, and annually for five (5) years thereafter, Equitable shall submit a compliance report, sworn under penalty of perjury that contains the following:

    a. at least one telephone number, one email, and one physical address as points of contact, which the NYAG may use to communicate with Equitable;

    b. names, telephone numbers, and physical, email, and Internet addresses of all businesses for which Equitable is the majority owner, or that Equitable directly or indirectly controls;

    c. a description of the activities of each such business identified in subparagraph (b), including the products and services offered, the means of advertising, marketing,

and sales, and the type of Financing offered, if any, and the involvement of any other Defendant in this Action;

d. a detailed description of the manner and form in which Equitable has complied with each paragraph and subparagraph of this Order, designating the relevant paragraph or subparagraph of this Order in each response; and

e. copies of each Order acknowledgement obtained pursuant to this Order.

43. For five (5) years, Equitable shall submit to the NYAG notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Equitable within fourteen (14) days of its filing.

44. Any submission to the NYAG required by this Order to be sworn under penalty of perjury shall be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

## IX. Order Distribution and Acknowledgement

**IT IS FURTHER ORDERED THAT:**

45. Within seven (7) days of the Effective Date, Equitable shall submit to the NYAG an acknowledgement of receipt of this Order, sworn under penalty of perjury.

46. For five (5) years after the Effective Date, Equitable, for itself and any other Entity in which Equitable is the majority owner or which it controls indirectly or directly, shall deliver a copy of this Order to (i) all principals, officers, directors, and LLC managers and members; (ii) all employees, agents, and representatives who participate in conduct related to the subject matter of this Order; (iii) all Sellers with whom Equitable is engaged in a business

relationship; and (iv) any business Entity that Equitable has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order. For current personnel, delivery shall occur within seven (7) days of the Effective Date. For all others, delivery shall occur before they assume their responsibilities.

47. Equitable shall secure a signed and dated statement acknowledging receipt of a copy of this Order, within thirty (30) days of delivery, from all persons receiving a copy of this Order under this Section.

## X. Notices

**IT IS FURTHER ORDERED THAT:**

48. Unless otherwise directed in writing by the NYAG, Equitable shall provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "New York v. Debt Resolve, Case No. 18-cv-9182" and send them by overnight courier or first-class mail to the below address:

> New York Attorney General's Office
> Bureau of Consumer Frauds and Protection
> Attention: Stewart Dearing
> 28 Liberty Street, 20th Floor
> New York, NY 10005.

## XI. Miscellaneous

**IT IS FURTHER ORDERED THAT:**

49. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the NYAG to enforce this Order, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy.

50. The facts alleged in the Complaint establish all elements necessary to sustain an action by the NYAG pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

51. This Order shall not impede or prevent this Action from continuing against any other person or Entity, including but not limited to the currently named Defendants.

52. If any clause, provision or section of this Order shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other clause, provision, or section of this Order and this Order shall be construed and enforced as if such invalid, illegal, or unenforceable clause, provision, or section had not been contained herein.

53. Nothing in this Order shall be construed to deprive any person of any private right under the law.

54. Nothing in this Order will limit the State of New York's use of its subpoena power under New York Executive Law § 63(12) or GBL §§ 349, 458-j or will otherwise limit the NYAG's use of any of its investigative powers or methods.

**XII. Retention of Jurisdiction**

**IT IS FURTHER ORDERED THAT:**

55. The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

XIII. Service

**IT IS FURTHER ORDERED THAT:**

56.     This Order may be served upon Equitable by email, certified mail, or United States mail, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the State of New York.


**IT IS SO ORDERED.**
DATED this 9th day of August, 2019.

_____
**Hon. Alison J. Nathan**
**United States District Court Judge**